Filed 11 February 17 P3:46
Chris Daniel - District Clerk
Harris County
ED101J016183339
By: adiliani a. solis

NO. 2010-51729

| | | |
|---|---|---|
| HOA TU LY. | § | IN THE DISTRICT COURT OF |
| Plaintiff. | § | |
| | § | |
| v. | § | HARRIS COUNTY. T E X A S |
| | § | |
| CARMAX AUTO SUPERSTORES. INC. | § | |
| and WARREN MOODY. | § | |
| Defendants. | § | 295th JUDICIAL DISTRICT |

## DEFENDANTS' TRADITIONAL MOTION FOR SUMMARY JUDGMENT

Defendants CARMAX AUTO SUPERSTORES, INC. ("CarMax") and WARREN MOODY ("Moody") (hereinafter, collectively, "Defendants") file their traditional motion for summary judgment against Plaintiff Hoa Tu Ly ("Ly" or "Plaintiff") pursuant to Tex. R. Civ. P. 166a.

## I.    PRELIMINARY STATEMENT

1.    This is a used car case.  Plaintiff purchased a 4 ½ year old Lexus RX 330 from CarMax[1] and, after mistreating the vehicle, is experiencing buyer's remorse.  Plaintiff's sole cause of action is an allegation of violation of the Texas Deceptive Trade-Practices-Consumer Protection Act ("DTPA"), which fails for the following reasons:

- Plaintiff's damages (if any) were caused by the introduction of contaminant(s) into the vehicle's fuel system *post*-purchase;

- The condition of the vehicle at the time of sale was as represented in the fully-integrated sales contract; and

- Plaintiff's own conduct waived coverage of any alleged defects under the express terms of the warranties included in her purchase of the vehicle.

## II.    SUMMARY JUDGMENT EVIDENCE

CarMax offers the following as summary judgment evidence:

Exhibit A    Plaintiff's Original Petition[2];

---

[1] Moody was the CarMax employee that assisted the Plaintiff at the time of her purchase.

[2] CarMax offers Plaintiff's pleading for the limited purpose of establishing the admissions and declarations against interest contained therein.

Certified Document Number: 47889025 - Page 1 of 10

1884476-1:CAAU:0048

**"B-24"**

Exhibit B      Business Records Affidavit:

           Exhibit B-1      Bill of Sale
           Exhibit B-2      Texas Motor Vehicle Retail Installment Contract
           Exhibit B-3      Buyer's Guide
           Exhibit B-4      CarMax Limited 30-Day Warranty Brochure
           Exhibit B-5      Price Quote
           Exhibit B-6      Mechanical Repair Agreement
           Exhibit B-7      Addendum to Texas Vehicle Purchase Agreement
           Exhibit B-8      List of Major Defects That May Occur In Used Vehicles
           Exhibit B-9      May 25, 2009 AutoCheck Vehicle History Report
           Exhibit B-10     Vehicle History Disclosure
           Exhibit B-11     Vehicle Repair Order History
           Exhibit B-12     February 1, 2011 AutoCheck Vehicle History Report
           Exhibit B-13     CarMax Rust Standards
           Exhibit B-14     CarMax Flood Damage Standards

Exhibit C      Affidavit of Isaac Harvey (the "Harvey Affidavit")

## III.    SUMMARY JUDGMENT STANDARD

2.    A defendant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment on that cause of action.[3] After a movant produces competent evidence to establish its right to summary judgment, the burden shifts to the non-movant to raise an issue of fact that would preclude summary judgment.[4] Plaintiff cannot do so in this case.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Elements of Claim

3.    For Plaintiff to prevail against Defendants on a claim under the DTPA, she must prove all of the following elements:

- Plaintiff is a consumer;

- CarMax and Moody can be sued under the DTPA

---

[3] *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

[4] *City of Houston v. Clear Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979); *see also Gagnier v. Wichelhaus*, 17 S.W.3d 739, 742 (Tex. App. – Houston [1st Dist.] 2000, pet. denied).

Certified Document Number: 47889025 - Page 2 of 10

1884476-1:CAAU:0048

- CarMax and Moody committed a wrongful act specified under the DTPA; and

- CarMax's and Moody's action was a producing cause of her damages.[5]

4.    <u>Wrongful Act and Reliance</u>.  The wrongful act must be one of the following:  (i) one of the acts from the "laundry list" enumerated in section 17.46(b) that was relied on by Plaintiff to her detriment[6]; (ii) breach of an express or implied warranty; or (iii) an unconscionable action or course of action.[7]

5.    <u>Producing Cause</u>.  A producing cause is an "efficient, exciting or contributing cause" that in the natural sequence of events produces injuries or damages.[8]  The act alleged to be a producing cause must be both a cause-in-fact and a substantial factor in causing the Plaintiff's injuries.[9]

**B.    Application To The Facts**

**Absence of Causation**

6.    <u>Producing Cause</u>.  The admissible summary judgment evidence conclusively negates causation.  As established by the evidence attached hereto, the cause of the defective operation of the vehicle, for which Plaintiff brought the car back to CarMax in July 2009 was the Plaintiff's own use

---

[5]  *See* **Amstadt v. U.S. Brass Corp.**, 919 S.W.2d 644, 649 (Tex. 1996).

[6]  **Henry Schein, Inc. v. Stromboe**, 102 S.W.3d 675, 686 (Tex. 2002) (reliance is a necessary element of a claim based on alleged violations of the DPTA "laundry list").

[7]  TEX. BUS. & COM. CODE §17.50(a).

[8]  **Haynes & Boone v. Bowser Bouldin, Ltd.**, 896 S.W.2d 179, 182 (Tex. 1995).

[9]  **Prudential Ins. Co. v. Jefferson Assoc.**, 896 S.W.2d 156, 161 (Tex. 1995); *see also* **Metro Allied Ins. Agency, Inc. v. Lin**, 304 S.W.3d 830, 835 (Tex.2009) (defendant's act must be a substantial factor in bringing about the injury and without which the harm would not have occurred).

Certified Document Number: 47889025 - Page 3 of 10

1884476-1:CAAU:0048

of contaminated fuel.[10]  With or without Plaintiff's knowledge, contaminants were introduced to the vehicle's fuel system while it was in her possession, causing the vehicle to stop working.[11]

7.      Plaintiff was repeatedly advised of the presence of the contaminated fuel and its effect on the vehicle by CarMax employees.[12]  Plaintiff took it upon herself to take the vehicle to a third-party vendor, who failed to properly clean out the contaminant(s), resulting in continued malfunctions of the vehicle and further repair costs.[13]

8.      Additionally, the evidence establishes that the vehicle was involved in one or more major accident(s) while in Plaintiff's possession, resulting in the near-total reconstruction of the vehicle's front end.[14]  Consequently, the evidence negates any inference that the Plaintiff's problems with the vehicle had anything to do with defects present at the time of purchase.

**The Condition Of The Vehicle Was As Represented / No Unconscionable Action**

9.      Even if Plaintiff were able to establish the existence of a defect present at purchase that caused her subsequent damages, she cannot establish wrongful conduct on the part of Defendants.

10.     "Laundry List" Allegations.  Plaintiff has alleged that CarMax "passed off the Lexus as that of one that had no flood damage" (sic.), as well as the following DTPA "laundry list" violations:

---

[10] See Exhibit B-11.  See also Exhibit C, Affidavit of Isaac Harvey.

[11] See Exhibits B-11 and C.

[12] See Exhibits B-11 and C.

[13] See Exhibits B-11 and C.

[14] See Exhibits B-11 and C.

Certified Document Number: 47889025 - Page 4 of 10

1884476-1:CAAU:0048

(a) Causing "confusion or misunderstanding as to the source. sponsorship. approval or certification of the Lexus" [ TEX. BUS. & COM. CODE § 17.46(b)(2)];

(b) Representing "that the Lexus had sponsorship. approval. characteristics. ingredients. uses. benefits. or quantities which it did not have" [TEX. BUS. & COM. CODE § 17.46(b)(5)];

(c) Representing "that the Lexus is of a particular standard. quality. or grade" [TEX. BUS. & COM. CODE § 17.46(b)(7)];

(d) Representing "that an agreement conferred or involved rights. remedies. or obligations which it did not have or involve" [TEX. BUS. & COM. CODE § 17.46(b)(12)];

(e) "Knowingly" making "false or misleading statements of fact concerning the need for parts. replacement, or repair service" [TEX. BUS. & COM. CODE § 17.46(b)(13)];

(f) Representing that a guaranty or warranty conferred or involved rights or remedies which it does not have or involve" [TEX. BUS. & COM. CODE § 17.46(b)(20)]; and

(g) Failing to "disclose information concerning goods or services which was known at the time of the transaction and the failure to disclose such information was intended to induce the Plaintiff into a transaction into which the Plaintiff would not have entered had the information been disclosed." [TEX. BUS. & COM. CODE § 17.46(b)(24)][15]

11.     Plaintiff's "laundry list" allegations fail in their entirety for the simple reason that, to the extent that any representation allegedly occurred outside the body of the purchase documents, it is immaterial to this suit.  At the time of purchase, Plaintiff executed a Bill of Sale, which provides:

"All prior written or oral statements, negotiations, communications or representations about the products  sold hereunder have been merged into or are superseded by the Bill of Sale, Retail Installment Sales Contract, and the other documents signed contemporaneously herewith, and if not incorporated into these writings, are not binding."[16]

---

[15] See Exhibit A, at ¶ 12.

[16] See Exhibit B-1.

Certified Document Number: 47889025 - Page 5 of 10

1884476-1:CAAU:0048

The Bill of Sale was executed Plaintiff. by which she acknowledged that she had read the entire agreement and agreed to be bound by its terms and conditions.[17]  The Retail Installment Sales Contract. which was likewise executed by Plaintiff. also contained an integration clause and a similar acknowledgement.[18]  Accordingly. Plaintiff is limited to the representations. if any. that are to be found within the "four corners" of the purchase agreement. her reliance, if any. upon any alleged extrinsic statement(s) having been negated by contract.[19]

12.    For its part, the purchase agreement does not contain any representation that the vehicle is free of rust.[20]  Indeed, the purchase agreement expressly included a warning to Plaintiff, which she executed, concerning the possibility of rust as a major defect that might occur in a used car.[21]

13.    To the extent that the purchase agreement contains a representation that the vehicle had not sustained any flood damage, that representation is supported by the facts.  At the time of purchase. Plaintiff received an AutoCheck Vehicle History Report, receipt of which she acknowledged.[22]  AutoCheck is a third-party program, provided by Experian Automotive. which

---

[17] See Exhibit B-1.

[18] See Exhibit B-2.

[19] A merger clause is a provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document. *See Ikon Office solutions, Inc. v. Eifert*, 125 S.W.3d 115, 125 n.6 (Tex.App.—Houston [14th Dist.] 2003, pet. denied).  A merger clause "that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." *See Schlumbereger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex.1997).  A merger/integration clause will also negate the element of reliance required for DTPA "laundry list" violations. *See Simpson v. Woodbridge Properties, L.L.C.*, 153 S.W.3d 682, 684 (Tex.App.—Dallas 2004, reh. overruled).

[20] See Exhibits B-1, B-2, B-3, B-4, B-5, B-6, B-7, B-8, B-9, B-10 and B-11.

[21] See Exhibit B-8.

Certified Document Number: 47889025 - Page 6 of 10

1884476-1:CAAU:0048

checks the vehicle's history for various "red flags", including, but not limited to, flood damage.[23] No record of flood damage was found.[24] Moreover, CarMax's own internal repair history for the vehicle does not indicate that any flood damage was present at the time of sale or later, the subsequent problems with the vehicle being due instead to the use by Plaintiff of contaminated fuel.[25] Further, the observations of the vehicle prior to Plaintiff's spoliation of the same demonstrate that the rust present on the vehicle was not of the type that would support the conclusion that the vehicle had been flooded, and, in fact, the available evidence demonstrated otherwise.[26] As such, the representations made in the purchase agreement concerning the vehicle's condition were and remain factually true.

14.   <u>Unconscionable Action</u>.   [TEX. BUS. & COM. CODE § 17.50(a)(3)]   Plaintiff also alleges that the foregoing conduct constitutes "an unconscionable action" under the DTPA.[27] An unconscionable action or course of action is defined under the DTPA as "an act or practice, which … takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.[28]   The evidence demonstrates that there was no unconscionable action.

---

[22] See Exhibits B-9 and B-10.

[23] See Exhibit B-9.

[24] See Exhibit B-9.

[25] See Exhibits B and B-11.

[26] See Exhibit C, Affidavit of Isaac Harvey.

[27] See Exhibit A, at ¶ 12

[28] See TEX. BUS. & COM. CODE § 17.45(5); *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex.2001).   To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated."   See *Vento*, 48 S.W.3d at 760 (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex.1998) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985))).

Certified Document Number: 47889025 - Page 7 of 10

1884476-1:CAAU:0048

Plaintiff got precisely what she had bargained for – a 4 ½ year old vehicle.  She acknowledged that she had read and agreed to be bound by the terms and conditions of the purchase agreement.[29]  She is not a victim of unconscionable conduct.

### The Applicable Warranty Did Not Cover The Defects Complained of By Plaintiff

15.  <u>Breach of Express Warranty</u>.  [TEX. BUS. & COM. CODE § 17.50(a)(2)]  Plaintiff also alleges that Defendants breached the warranty on the vehicle by not repairing or replacing the vehicle.[30]  However, Plaintiff did not give CarMax the opportunity to make repairs to the vehicle, taking it elsewhere for repairs.[31]

16.  <u>The 30-Day Limited Warranty</u>.  CarMax provided Plaintiff with a 30-day Limited Warranty of her vehicle.  The limited warranty expressly states that it will not provide coverage for "damage or breakdown due to vehicle/component abuse, misuse, or alteration", and that Plaintiff would waive any claim or remedy under the Limited Warranty if she elected to have the vehicle repaired anywhere other than a CarMax facility, without prior authorization.[32]  Furthermore, the Limited Warranty expired per its express terms prior to Plaintiff's first reported complaint with the vehicle.[33]

17.  <u>The Extended Warranty</u>.  The extended warranty Plaintiff purchased expressly states that it will not provide coverage (a) when repairs are performed without prior authorization; (b) for a

---

[29] See Exhibits B-1 and B-2.

[30] See Exhibit A, at ¶ 12.

[31] See Exhibit B-11.

[32] See Exhibit B-4.

[33] See Exhibits B-3, B-4, B-11 and C.

Certified Document Number: 47889025 - Page 8 of 10

1884476-1:CAAU:0048

breakdown[34] when the use of contaminated fluids caused or contributed to the breakdown.[35] Plaintiff's issues with the vehicle were caused, as she was repeatedly informed by CarMax, by her own use of contaminated fuel, and she took it to a non-approved location for repairs, which ultimately did not fix the problem.[36]   Accordingly, Plaintiff's own actions placed the vehicle's problems outside the scope of the extended warranty, and CarMax had no obligation to her under either the Limited Warranty or the extended warranty.  As such, there has been no breach of a warranty by CarMax.

## IV. CONCLUSION

18.    Judgment that Plaintiff take nothing from Defendants is mandated because Defendants have conclusively negated one or more elements of Plaintiff's causes of action.

## V. PRAYER

WHEREFORE, Defendants CARMAX AUTO SUPERSTORES, INC and WARREN MOODY ask this court to grant this Motion and render final judgment that Plaintiff take nothing against Defendants by reason of her claims herein, and for such other and further relief to which Defendants may be entitled.

---

[34] "Breakdown" is defined in the extended warranty as "the failure of any original or like replacement part covered by this Agreement to perform its intended function(s) in normal service ..." See Exhibit B-6.

[35] See Exhibit B-6.

[36] See Exhibits B-11 and C.

Certified Document Number: 47889025 - Page 9 of 10

1884476-1:CAAU:0048

Respectfully submitted,

HUGHES, WATTERS & ASKANASE, L.L.P.

By: /s/ Lindsay L. Lambert
    Lindsay L. Lambert    TBA #11844225
    Three Allen Center
    333 Clay, 29th Floor
    Houston, Texas 77002
    Telephone: (713) 759-0818
    Facsimile: (713) 759-6834

ATTORNEYS FOR DEFENDANTS,
CARMAX AUTO SUPERSTORES, INC. and
WARREN MOODY

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing instrument to be transmitted to all parties of record by messenger delivery service, on February 17th, 2011, as follows:

Thomas N. Thurlow
The Lyric Center
440 Louisiana, Suite 1200
Houston, Texas 77002

               /s/ Lindsay L. Lambert
               Lindsay L. Lambert

Certified Document Number: 47889025 - Page 10 of 10

1884476-1:CAAU:0048



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:        47889025 Total Pages:  10

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

NO. 2010 51729

| | | |
|---|---|---|
| HOA TU LY | § | IN THE DISTRICT COURT OF |
| v. | § | HARRIS COUNTY, TEXAS |
| CARMAX AUTO SUPERSTORES, INC.<br>and WARREN MOODY | § | 295 JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION TO INCLUDE REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW HOA TU LY, Plaintiff, and files her Original Petition against CarMax Auto Superstores, Inc. and Warren Moody, Defendants, and in support thereof would respectfully show the Court as follows:

### A. DISCOVERY LEVEL

1.    Plaintiff requests the Court enter a discovery control plan and recognize this case as proceeding under a Level II discovery control plan pursuant to TEX. R. CIV. P. 190.

### B. PARTIES

2.    Plaintiff Hoa Tu Ly is an individual residing in Harris County, Texas.

3.    Defendant CarMax Auto Superstores, Inc. is a corporation existing under the laws of the State of Texas. This defendant may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

4.    Defendant Warren Moody is an individual and can be served at his place of employment, CarMax Auto Superstores, Inc., 2906 Southwest Freeway, Houston, Harris County, Texas 77074.

### C. JURISDICTION AND VENUE

5.    Venue is proper in this county under a mandatory provision. Specifically, this suit is brought under the Texas Deceptive Trade Practices Act, which provides that such an action may be filed only in a county in which venue is proper under

Certified Document Number: 47889038 - Page 1 of 5



Civil Practices & Remedies Code or whether the defendant or its authorized agent solicited the transaction made the subject of the suit. Venue is proper in this county because a substantial part, if not all, of the causes of action made the basis of this lawsuit accrued In Harris County, Texas. All conditions precedent to bringing the claims asserted herein have occurred and/or have been waived by the defendants, including Plaintiff's attempt to mitigate damages. Plaintiff's damages are within the jurisdictional limits of this Court.

## D. NOTICE FACTS

6.     On or about May 25, 2009, Plaintiff purchased a 2005 Lexus RX 330 from CarMax Auto Superstores, Inc. (Defendant) and Warren Moody, its manager (Defendant manager).

7.     Plaintiff Hoa Tu Ly, a native of Viet Nam, and a citizen of the United States of America, will testify that she was assured that this vehicle was presented to her by Defendants as being a vehicle in excellent condition. Plaintiff relied on these assurances, and also relied upon numerous television ads setting forth the claim of Defendants that they were highly ethical and trustworthy. As an American citizen whose native tongue is Vietnamese, Plaintiff relied upon these claims and assurances to her detriment. Plaintiff has since been advised by Defendant that even though the car she bought was covered in rust, that this result was within the "rust standards" of CarMax.

8.     Upon information and belief the defendants committed fraud by concealing the flood damage sustained the Lexus.

9.     Plaintiff continues to experience serious problems with the Lexus as a result of the flood damages. Plaintiff agreed to the purchase price in the amount of $35,736.47 for the Lexus based on the marketplace value of a vehicle without flood damage. As a result, Plaintiff has incurred damages from the loss of the benefit of the bargain and diminished value of the vehicle, the resale value.

### E. DTPA

10.     The foregoing allegations are incorporated herein by reference for all purposes as though set forth verbatim in support of the following causes of action:

11.     Plaintiff is a consumer under the Texas Deceptive Trade Practices Act because Plaintiff is an individual who acquired goods by the purchase of the Lexus. Tex. Bus. & Com. Code § 17.45(4).

12.     Defendants violated the Texas Deceptive Trade Practices Act because defendants engaged in false, misleading or deceptive acts and/or practices that Plaintiff relied on to her detriment.  Specifically, defendants acting in connection with and/or as agents of CarMax Auto Superstores, Inc.: (a) passed off the Lexus as that of one that had no flood damage, (b) caused confusion or misunderstanding as to the source, sponsorship, approval or certification of the Lexus, (c) represented that the Lexus had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which it did not have, (d) represented that the Lexus is of a particular standard, quality, or grade, (e) represented that an agreement conferred or involved rights, remedies, or obligations which it did not have or involve, (f) knowingly made false or misleading statements of fact concerning the need for parts, replacement, or repair service, (g) represented that a guarantee or warranty conferred or involved rights or remedies which it does not have or involve, (h) failed to disclose information concerning goods or services which was known at the time of the transaction and the failure to disclose such information was intended to induce the Plaintiff into a transaction into which the Plaintiff would not have entered had the information been disclosed, (i) breached express warranties, and (j) engaged in unconscionable action, which to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree.

### F. TREBLE DAMAGES

13.     Because defendants acted knowingly, Plaintiff is entitled to recover treble damages under Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50(b)(1).

### G. DAMAGES

14.     Defendants' conduct was a producing cause of the economic damages and mental anguish suffered by Plaintiff. Defendants' conduct was committed knowingly because at the time of the acts and practices complained of defendants had actual awareness of the falsity, deception, or unfairness of the acts or practices giving rise to Plaintiff's claims.

15.     Plaintiff seeks unliquidated damages in the amount that is within the jurisdictional limits of the Court and determined by the trier of fact.

### H. ATTORNEY'S FEES

16.     Plaintiff is entitled to recover reasonable and necessary attorney fees under Tex. Bus. & Com. Code § 17.50(d).

### I. NOTICE & CONDITIONS PRECEDENT

17.     Plaintiff gave defendants notice as required by Tex. Bus. & Com. Code § 17.505(a).

18.     All conditions precedent have been performed or have occurred as required b y Tex. R. Civ. P. 54.

### J. REQUEST FOR DISCLOSURE

19.     Pursuant to Rule 194, Defendants are requested to disclose, within 50 days of receipt of this request, the information or material described in Rule 194.2.

### K. PRAYER

for the reasons stated above, Plaintiff requests the defendants be cited to appear and upon trial, judgment is entered in Plaintiff's favor in at least the following particulars:

a.  actual damages to be determined by the trier of fact in an amount within the jurisdictional limits of this Court;

b.  all special or consequential damages as allowed by law;

c.  cost of repairs;

d.  loss of use during repairs;

e.  lost time;

f.  out-of-pocket expenses;

g.  loss of benefit-of-the-bargain;

h.  any other actual damages incurred;

i.  mental anguish damages;

j.  treble damages;

k.  exemplary damages as awarded by the court or allowed by law;

l.  pre and post-judgment interest;

m.  attorneys' fees and costs of suit; and

n.  such other relief, general and special, legal and equitable to which Plaintiff may be justly entitled.

Respectfully submitted.

THOMAS N. THURLOW & ASSOCIATES, P.C.

By: _____

THOMAS N. THURLOW
The Lyric Centre
440 Louisiana, Suite 1200
Houston, Texas 77002
(713) 224-6774
TBA NO. 20003000
ATTORNEYS FOR PLAINTIFF

Certified Document Number: 47889038 - Page 5 of 5



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:        47889038 Total Pages:  5

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

NO. 2010-51729

| | | |
|---|---|---|
| HOA TU LY, | § | IN THE DISTRICT COURT OF |
| Plaintiff. | § | |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| CARMAX AUTO SUPERSTORES, INC. | § | |
| and WARREN MOODY, | § | |
| Defendants. | § | 295th JUDICIAL DISTRICT |

## BUSINESS RECORDS AFFIDAVIT

BEFORE ME, the undersigned authority on this day personally appeared ___Will Vela___, who is known to me and who, being by me duly sworn upon his oath, did depose and say as follows:

1. "My name is ___Will Vela___. I am over the age of eighteen years, have never been convicted of a felony, am fully competent to testify, and have personal knowledge of the facts stated in this Affidavit.

2. I am a ___Business Office Manager___ for CarMax Auto Superstores, Inc. ("CarMax"). I am also a custodian of records for CarMax with regard to its records relating to the May 25, 2009 sale of a 2005 Lexus RX 330 (hereinafter, the "vehicle") to Hoa Tu Ly, as well as subsequent dealings with Mrs. Ly with regard to the said vehicle (the "Ly Sale"). The Ly Sale was financed by Wells Fargo Bank, N.A. ("Wells Fargo").

3. Attached to this affidavit are forty-six (46) pages of documents, which are true and correct copies of records of CarMax pertaining to the Ly Sale. These records were made by persons with knowledge of the facts or were made from information transmitted by persons with knowledge of the facts stated in the records. These records were made at or near the time of the acts, events, conditions, and/or opinions appearing on them. These records were made and kept in the course of the regularly conducted business activity of CarMax.

Further affiant sayeth not.

Name: ___Will Vela___
Title: ___Business Office Manager___



Certified Document Number: 47889031 - Page 1 of 15

SUBSCRIBED AND SWORN to before me on this _14th_ day of February 2011, to certify which witness my hand and seal of office.

MICHAEL LEE MUENCH JR.
Notary Public, State of Texas
My Commission Expires
May 17, 2014

_____
Notary Public, State of _____Texas_____

Certified Document Number: 47889031 - Page 2 of 15

1833527-1:CAAU:0048

Certified Document Number: 47889031 - Page 3 of 15

Buyer HOA TU LY
Address 13005 LEADER ST
Address HOUSTON, TX 77072
Phone (Home) (713) 899-3313      (Work) _____

Co-Buyer _____
Address _____
Address _____
Phone (Home) _____ (Work) _____

### VEHICLE YOU ARE PURCHASING
Year 2005    Make LEXUS      Model RX 330
VIN 2T2HA31U05C054670    Stock Number 5763204
Mileage  44,935    New ___ Used _X_ CarMax _X_ ValuMax ___

### YOUR INSURANCE INFORMATION
Insurance Co. Name PROGRESSIV
Agent's Name PROGRESSIVE      Phone (800) 274-4499
Address _____
Address _____

### NO LIABILITY INSURANCE INCLUDED

### VEHICLE(S) YOU SOLD TO CARMAX ("TRADE-IN")
Year 2002    Make LEXUS      Model RX 300
Mileage 131794    VIN JTJGF10U420130014
Year _____  Make _____  Model _____
Mileage _____ VIN _____

The Dealer's Inventory Tax charge is intended to reimburse the dealer for ad valorem taxes on its motor vehicle inventory. The charge, which is paid by the dealer to the county tax assessor-collector, is not a tax imposed on a consumer by the government, and is not required to be charged by the dealer to the consumer.

A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents and performing services relating to the closing of a sale. A documentary fee may not exceed $50. This notice is required by law. Un honorario de documentación no es un honorario oficial. Un honorario de documentación no es requerido por la ley, pero puede ser cargada al comparador como gastos de manejo de documentos y para realizar servicios relacionados con el cierre de una venta. Un honorario de documentación no puede exceder $50 Esta notificación es requerida por la ley.

PLEASE READ PAGES 2 AND 3 OF THIS DOCUMENT. THEY CONTAIN TERMS THAT ARE PART OF THIS BILL OF SALE AND AFFECT YOUR PURCHASE.

PLEASE READ THE REVERSE SIDE OF THIS DOCUMENT. IT CONTAINS TERMS THAT ARE PART OF THIS BILL OF SALE THAT AFFECT YOUR PURCHASE

# CarMax  BILL OF SALE

| (1) | Base Price of Vehicle | | | $ | 22,849.00 |
|---|---|---|---|---|---|
| (2) | Accessories (See Accessories Addendum attached hereto and incorporated herein.) | | | $ | 0.00 |
| (3) | Additional Charges (Taxable) | | | | |
| | N/A | | $ | N/A | |
| | N/A | | $ | N/A | |
| | N/A | | $ | N/A | |
| | N/A | | $ | N/A | |
| | Total Additional Charges (Taxable) | | | $ | 0.00 |
| (4) | TOTAL CHARGES (TAXABLE) | | | $ | 22,849.00 |
| (5) | Extended Service Agreement MaxCare _X_   ValuServ ___   Manuf. ___ | | | $ | 1,649.00 |
| (6) | Credit Life Insurance, Involuntary Unemployment Insurance | | | | |
| | N/A | | | $ | 0.00 |
| (7) | Additional Charges (Non-Taxable) | | | | |
| | Title Fee | | $ | 33.00 | |
| | Documentary Fee | | $ | 49.00 | |
| | County Fee | | $ | 10.50 | |
| | Dealer's Inventory Tax | | $ | 48.05 | |
| | Registration Fees | | $ | 58.80 | |
| | Sales Tax | | $ | 1,115.56 | |
| | N/A | | $ | N/A | |
| | N/A | | $ | N/A | |
| | Total Additional Charges (Non-Taxable) | | | $ | 1,314.91 |
| (8) | Discharge of Lien on "Trade-In" To: LEXUS FINANCIAL SERVICES | | | $ | 9,923.56 |
| (9) | TOTAL CHARGES (NON-TAXABLE) | | | $ | 12,887.47 |
| (10) | TOTAL SELLING PRICE (4 + 9) | | | $ | 35,736.47 |
| (11) | [A] "Trade-In" Value | | $ | 5,000.00 | |
| | [B] Cash to Buyer From "Trade-In" | | $ | 0.00 | |
| | [C] "Trade-In" Value Applied to Total Selling Price | | | $ | 5,000.00 |
| (12) | Down Payment | | | $ | 2,500.00 |
| (13) | Incentives, Rebates and Credits | | | | |
| | N/A | | $ | N/A | |
| | N/A | | $ | N/A | |
| | Total Incentives, Rebates and Credits | | | $ | 0.00 |
| (14) | Other   N/A | | | $ | 0.00 |
| (15) | YOUR BALANCE DUE AT SETTLEMENT (10 – 11[C] – 12 – 13 – 14) | | | $ | 28,236.47 |

I WILL NOT PURCHASE EXTENDED SERVICE COVERAGE FOR MY VEHICLE AT THIS TIME.

BUYER'S INITIALS _____      CO-BUYER'S INITIALS _____

BY EXECUTING THIS BILL OF SALE, BUYER (AND CO-BUYER, IF APPLICABLE) ACKNOWLEDGES READING THE ENTIRE AGREEMENT (THREE PAGES) AND AGREES TO BE BOUND BY ALL OF TERMS, INCLUDING THE ARBITRATION PROVISION, AND CONDITIONS HEREIN. BUYER (AND CO-BUYER, IF APPLICABLE), CERTIFIES TO BEING 18 YEARS OF AGE OR OLDER AND TO RECEIVING A FULLY COMPLETED COPY OF THIS DOCUMENT. THIS BILL OF SALE IS NOT VALID UNLESS SIGNED AND ACCEPTED BY AN AUTHORIZED REPRESENTATIVE OF CARMAX.

_____ BUYER _____   DATE 5/25/09      _____ CO-BUYER _____   DATE _____

RALPH BONSU
RALPH BONSU
SALESPERSON _____   DATE _____      AUTHORIZED REPRESENTATIVE _____

TX 03/08      www.carmax.com      PFF960


DEFENDANT'S EXHIBIT
B-1

## Additional Terms and Conditions

**DOWNPAYMENTS MADE TOWARD BALANCE DUE AT SETTLEMENT.** If payment to reduce the Balance Due at Settlement is returned, whether in the form of an unpaid check or voided CarMax voucher, you agree that within 24 hours following written or oral notice from CarMax you will pay to CarMax, in cash or certified funds only, the amount of the returned check or voided CarMax voucher, along with the maximum allowable NSF fee in the case of a returned check. Alternatively, CarMax may, at its sole discretion, permit you to return the vehicle to CarMax within 24 hours following written or oral notice from CarMax. If CarMax permits you to return the vehicle and you fail to return it within 24 hours after receiving written or oral notice, you agree that CarMax may, solely at its option (1) hold you immediately liable for the Balance Due at Settlement, as shown on the front of this Bill of Sale; or (2) cancel this Bill of Sale and immediately retake possession of the vehicle and collect from you all reasonable expenses incurred by CarMax in connection with retaking the vehicle. Upon return or retaking of the vehicle, you also agree to pay for any damages to the vehicle that occur while the vehicle is in your possession or under your control and a Use Fee of $.20 per mile based upon the number of miles the vehicle was driven.

**LIMITATIONS OF WARRANTIES. CARMAX MAKES NO EXPRESS WARRANTIES UNLESS SEPARATELY SET FORTH IN WRITING. ANY AND ALL IMPLIED WARRANTIES APPLICABLE TO THE PRODUCTS SOLD HEREUNDER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THE WRITTEN LIMITED WARRANTY GIVEN BY CARMAX, IF ANY.**

To the extent permitted by applicable law, CarMax shall not be liable for any damages relating to loss of use of the products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. Any and all warranties are extended only to the original purchaser(s).

**SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.**

The CarMax Warranty Brochure, by this reference, is made part of this Bill of Sale. Please read it in its entirety because it contains the details of the Limited Warranty.

**ACCURACY OF ODOMETER READING.** The Odometer Mileage listed on the Odometer Disclosure Statement on the reverse side of the Certificate of Title (or in a separate Odometer Disclosure Statement) to the vehicle transferred to Buyer or Co-buyer hereunder is accurate to the best knowledge and belief of CarMax. Buyer and Co-buyer agree that CarMax shall have no liability to Buyer or Co-buyer under this Bill of Sale or otherwise if the odometer is determined to be inaccurate for reasons beyond the control of, and without the actual knowledge of, CarMax. This paragraph does not limit the applicability of CarMax's Clean Title Guarantee or any remedies afforded Buyer or Co-buyer thereunder.

**RETURN POLICY FOR USED VEHICLES.** You may return your vehicle to CarMax for a refund and rescind this Bill of Sale within 5 days of the date of purchase, if the condition of the vehicle does not change. THIS RETURN POLICY ONLY APPLIES TO USED VEHICLES.

**NO BROKERAGE FEE:** This transaction is not subject to a fee received by a broker from the selling motor vehicle dealer.

**MERGER CLAUSE.** All prior written or oral statements, negotiations, communications or representations about the products sold hereunder have been merged into or are superseded by the Bill of Sale, Retail Installment Sales Contract, and the other documents signed contemporaneously herewith, and, if not incorporated into these writings, are not binding.

---

**FEDERAL BUYERS GUIDE DISCLOSURE.** If you are buying a used vehicle with this contract, as indicated in the description of the vehicle, federal regulation may require a special Buyers Guide to be displayed on the window. **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.** Si usted esta comprando un vehículo usado mediante este contrato según la descripción del vehículo arriba, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador. **GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

---

**ARBITRATION PROVISION:** This Arbitration Provision describes when and how a Claim (defined below) may be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. By signing this Bill of Sale ("Contract"), you and we agree to be bound by the terms of this Arbitration Provision.

IF YOU OR WE CHOOSE ARBITRATION,

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

PFF960 Bill of Sale  Pg 2
Revision Date 02/08

Certified Document Number: 47889031 - Page 4 of 15

(a) What Claims are Covered: A "claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this sale and/or this Contract or the vehicle and related goods and services that are the subject of the purchase and this Contract, and includes:

- Initial claims, counterclaims, cross-claims and third-party claims.
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief).
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions.
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract.

(b) Commencing Arbitration: Either you or we may require any Claim to be arbitrated. Arbitration begins by giving written notice to the other party of the intent to require arbitration. This notice may be given before or after a lawsuit has been started over the Claim or with respect to other Claims brought later in the lawsuit. Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules of the arbitration Administrator. We will not choose to arbitrate an individual claim that you bring against us in small claims court or your state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, we then may choose arbitration.

(c) Choosing the Administrator: You may choose either arbitration Administrator listed below:

- American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org, (800) 778-7879.
- National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com, (800) 474-2371.

If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose for you. If for any reason the chosen organization is unable or unwilling or ceases to serve as the Administrator, the other organization will conduct the arbitration. In all cases, any arbitrator must be a lawyer with more than 10 years of experience.

(d) Choosing the Location: Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

(e) Paying for Arbitration: Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. We will pay these fees if required by applicable law, or if otherwise necessary to ensure that this Arbitration Provision is enforceable. We will not ask you to pay or reimburse us for any fees we pay the Administrator. If we require a Claim to be arbitrated, we will pay or reimburse you for up to $1,000 in fees that would otherwise be charged to you by the Administrator. However, if either we or you require a Claim to be arbitrated, you may tell us in writing that you are unable to pay the fees charged by the Administrator or that you believe those fees to be excessively high. If you do so, we will pay or reimburse you for up to all of the fees that would otherwise be charged to you by the Administrator if your request is reasonable and in good faith. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or this Arbitration Provision provide otherwise.

(f) Class Action Waiver: You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

(g) Right to Discovery: In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the Administrator, either party may submit a written request to the arbitrator to expand the scope for discovery normally allowable under the arbitration rules of the Administrator. The Arbitrator will have discretion to grant or deny that request.

(h) Arbitration Result and Right of Appeal: Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. However, if the amount of the Claim exceeds $100,000, or if an arbitration award is a "zero" or "take nothing" award, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. However, we will consider any good faith, reasonable request for us to pay all or part of those fees if you are the appealing party.

(i) Governing Law: This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court.

(j) Rules of Interpretation: This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

CarMax Store # **7111**

DMS Tracking # 1010539     Reprint #: 0



05/25/2009 08:28 pm  1 of 1

PFF960 Bill of Sale  Pg 3
Revision Date 02/08

CMAX 00047

Certified Document Number: 47889031 - Page 6 of 15

**TEXAS MOTOR VEHICLE RETAIL INSTALLMENT CONTRACT**

Contract Number: 223164
Date of Contract: May 28, 2009

Buyer: HOA T LY, 13002 LEADER ST, HOUSTON, TX 77072   (713) 606-3313

Co-Buyer:

Seller/Creditor: CarMax Auto Superstores, Inc., 6800 SOUTHWEST FREEWAY, HOUSTON, TX 77074   (713) 774-3400

KMX 1919554

**PROMISE TO PAY**

| Vehicle for Purchase | 2006 | LEXUS | RX 330 | 2T2HA31U05C054670 | USED |
| | Year | Make | Model | Vehicle Identification Number | |

USE FOR WHICH PURCHASED: ☑ PERSONAL, FAMILY OR HOUSEHOLD   ☐ BUSINESS OR COMMERCIAL   ☐ AGRICULTURAL

| Vehicle "Trade In" | 2002 | LEXUS | RX 300 | JT2GF10U420130014 | |
| | Year | Make | Model | Vehicle Identification Number | License No. |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 11.21 % | $ 10,860.97 | $ 29,236.47 | $ 39,097.44 | $ 41,597.44 |

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $543.02 | Monthly, beginning Jul 09, 2009 |

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| 1. Cash price (incl. any accessories) | $ 27,849.00 | (1) |
| 2. Downpayment: | | |
| Net trade-in | $ 5,000.00 | |
| Gross trade-in | $ 9,923.50 | |
| − Payoff by seller | $ .00 | |
| + Prior lease | $ 2,500.00 | |
| + Cash | $ .00 | |
| + Manufacturer's Rebate | $ .00 | |
| + Other (describe) | $ .00 | |
| Total down payment | $ 2,500.00 | (2) |
| 3. Unpaid balance of cash price (1 minus 2) | $ 25,349.00 | (3) |
| 4. Other charges including amounts paid to others on your behalf | | |
| A. Net "trade in" payoff to LEXUS FINANCIAL | $ 4,923.50 | |
| B. Credit lien paid to government agencies | $ .00 | |
| C. Dealer's inventory tax | $ 48.05 | |
| D. Sales tax | $ 1,115.56 | |
| E. Other taxes | $ .00 | |
| F. Government license and/or registration fees | $ 92.30 | |
| G. Government certificate of title fee | $ 33.00 | |
| H. Government vehicle inspection fees | $ .00 | |
| I. Deputy service fee paid to seller | $ .00 | |
| J. Documentary fee | $ 40.00 | |
| K. Other charges (seller must identify who is paid and describe purpose) | | |
| | $ .00 | |
| | $ .00 | |
| | $ .00 | |
| Total other charges and amounts paid to others on your behalf | $ 7,887.47 | (4) |
| 5. Amount Financed (3 + 4) | $ 28,236.47 | (5) |

**VEHICLE RETURN POLICY**

**CONSUMER WARNING**
NOTICE TO THE BUYER - I WILL NOT SIGN THIS CONTRACT BEFORE I READ IT OR IF IT CONTAINS ANY BLANK SPACES. I AM ENTITLED TO A COPY OF THE CONTRACT I SIGN. UNDER THE LAW, I HAVE THE RIGHT TO PAY OFF IN ADVANCE ALL THAT I OWE AND UNDER CERTAIN CONDITIONS MAY SAVE A PORTION OF THE FINANCE CHARGE. I WILL KEEP THIS CONTRACT TO PROTECT MY LEGAL RIGHTS.

I AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. I CONFIRM THAT BEFORE I SIGNED THIS CONTRACT, YOU GAVE IT TO ME, AND I WAS FREE TO TAKE IT AND REVIEW IT.

Seller: CarMax Auto Superstores, Inc.   May 28, 2009

By: _Debra Wallace_

THIS CONTRACT IS NOT VALID UNTIL YOU AND I SIGN IT

Buyer's Signature

Co-Buyer's Signature

DEFENDANT'S EXHIBIT B-2

CARMAX-7111

CONSUMER CREDIT COMMISSIONER NOTICE. To contact    713-774-3400
about this account, call _____ . This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, Texas 78705-4207; (800) 538-1579; www.occc.state.tx.us, and can be contacted relative to any inquiries or complaints.

## OTHER TERMS AND CONDITIONS

LATE CHARGE. *(illegible paragraph)*

RETURNED CHECK CHARGE. *(illegible paragraph)*

SECURITY INTEREST. *(illegible)* give you a security interest in:

- The motor vehicle including all accessories and parts now or later attached and any other goods financed in this contract
- All insurance proceeds and other proceeds received for the motor vehicle
- Any insurance policy, service contract or other contract financed to you, and any proceeds of those contracts, and
- Any refunds of charges included in this contract for insurance or service contracts.

*(illegible paragraphs)*

CARE OF THE MOTOR VEHICLE. *(illegible paragraph)*

AGREEMENT TO KEEP MOTOR VEHICLE INSURED. *(illegible paragraph)*

YOUR RIGHT TO PURCHASE REQUIRED INSURANCE IF I FAIL TO KEEP THE MOTOR VEHICLE INSURED. *(illegible paragraph)*

PHYSICAL DAMAGE INSURANCE PROCEEDS. *(illegible paragraph)*

RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES. *(illegible paragraph)*

APPLICATION OF CREDITS. *(illegible paragraph)*

TRANSFER OF RIGHTS. *(illegible paragraph)*

USE AND TRANSFER OF THE MOTOR VEHICLE. *(illegible paragraph)*

DEFAULT. I will be in default if:

- I do not pay any amount when it is due,
- I break any of my promises in this contract,
- *(illegible)*
- I file bankruptcy, bankruptcy is filed against me, or the motor vehicle becomes property of a bankruptcy

*(illegible paragraph)*

YOUR RIGHT TO DEMAND PAYMENT IN FULL. *(illegible paragraph)*

REPOSSESSION. *(illegible paragraph)*

MY RIGHT TO REDEEM. *(illegible paragraph)*

DISPOSITION OF THE MOTOR VEHICLE. *(illegible paragraph)*

COLLECTION COSTS. *(illegible paragraph)*

CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS. *(illegible paragraph)*

LEGAL LIMITATIONS ON YOUR RIGHTS. *(illegible paragraph)*

HOW YOU WILL APPLY MY PAYMENTS. *(illegible paragraph)*

EFFECT OF EARLY AND LATE PAYMENTS. *(illegible paragraph)*

APPLICABLE LAW, *(illegible paragraph)*

INTEGRATION AND SEVERABILITY CLAUSE. *(illegible paragraph)*

---

SELLER'S DISCLAIMER OF WARRANTIES. UNLESS THE SELLER MAKES A WRITTEN WARRANTY, OR ENTERS INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, THE SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, ON THE MOTOR VEHICLE, AND THERE WILL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE MOTOR VEHICLE THAT THE MOTOR VEHICLE MANUFACTURER MAY PROVIDE.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*(illegible small text)*

*(illegible footer paragraphs)*

Used Car Buyers Guide Disclosure. *(illegible)*

Spanish Translation: Guía para compradores de vehículos usados. La información que se da al momento de la venta del presente contrato. La información del formulario de la ventanilla deja sin efecto más disposiciones en contrario contenidas en el contrato de venta.

---

## ASSIGNMENT BY SELLER

*(illegible paragraph)* Wells Fargo Bank, N.A. *(illegible paragraph)*

Signature: *Debra Stevens*    Date: 5/25/09    Title: BOA

CMAX 0006

DMS Tracking #: 1819549         Report # 0                                   05/25/2009 09:29 pm  1 of 1

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| LEXUS | RX 330 | 2005 | 2T2HA31U05C054670 |
|-------|--------|------|-------------------|
| VEHICLE MAKE | MODEL | YEAR | VIN NUMBER |

5763204
DEALER STOCK NUMBER (Optional)

**WARRANTIES FOR THIS VEHICLE:**

## ☐ AS IS - NO WARRANTY

YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle.

## ☒ WARRANTY

☐ FULL    ☒ LIMITED WARRANTY. The dealer will pay $\underline{100}$% of the labor and $\underline{100}$% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, "implied warranties" may give you even more rights.

**SYSTEMS COVERED:**
Engine, Transmission, Front Wheel Drive, Rear Wheel Drive, Steering, Suspension, Brakes, Electrical, Electronic, Air Conditioning, Cooling System, Interior, Assemblies and Controls.

For a complete copy of our "Limited 30-Day Warranty", contact a Business Office Associate.

**DURATION:**
30 Days
5-Day Vehicle Return Policy

MANUFACTURER'S WARRANTY MAY STILL APPLY
The manufacturer's original warranty may not have expired on the vehicle. Consult the manufacturer's warranty booklet for possible applicability and for details as to warranty coverage, service locations, etc.

☒ SERVICE CONTRACT. A service contract is available at an extra charge on this vehicle. Ask for details as to coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of the time of sale, state law "implied warranties" may give you additional rights.

PRE PURCHASE INSPECTION: ASK THE DEALER IF YOU MAY HAVE THIS VEHICLE INSPECTED BY YOUR MECHANIC EITHER ON OR OFF THE LOT.

SEE THE BACK OF THIS FORM for important additional information, including a list of some major defects that may occur in used motor vehicles.

PFF1285                                                                              05/05



DEFENDANT'S
EXHIBIT
B-3

Below is a list of some major defects that may occur in used motor vehicles.

**Frame & Body**
Frame—cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage excluding normal seepage
Cracked or damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage

---

## CarMax Auto Superstores, Inc.

**DEALER**

### 6909 SOUTHWEST FREEWAY

**ADDRESS**

### HOUSTON,TX,77074

### (713)774-3400

**SEE FOR COMPLAINTS**

I hereby acknowledge receipt of the Buyers Guide at the closing of this sale.

(Buyers Signature) _____    (Date) 5/25/09

**IMPORTANT: The information on this form is part of any contract to buy this vehicle. Removal of this label before consumer purchase (except for purpose of test-driving) is a violation of federal law (16 C.F.R. 455).**

Certified Document Number: 4788903 - Page 9 of 15



 The CarMax Limited 30-Day Warranty Brochure

Our Certified Quality Inspection assures your used vehicle will be in top condition when you buy it. Just to make sure, we provide you with a Limited 30-Day Warranty. This Warranty applies only to used vehicles.

## Warranty Coverage

This Warranty is mechanical breakdown coverage. If any of the parts identified below (the "Covered Parts") breakdown, then for a period of 30 days from the date the Vehicle was purchased (the "Warranty Period"), CarMax will at no charge repair or replace any such part(s). CarMax, may, however, at its sole discretion, elect to accept return of the Vehicle and provide Customer with a refund. Mechanical breakdown coverage applies to the Covered Parts listed in the next section plus related labor, but certain exclusions apply (see Exclusions From Coverage section below).

Customer must notify CarMax of the failure of a Covered Part within the Warranty Period. Repairs will be made with parts of like kind and quality. It is expressly understood that replacement parts and/or components need not be new, but may be used or rebuilt, which will be guaranteed serviceable. A "breakdown" or "mechanical breakdown" means the failure of any original or like replacement part covered by this Warranty to work as it was designed to work in normal service. However, reduced operation or reduced performance due to normal wear and tear shall not be considered a breakdown within the meaning of this Warranty. This Warranty does not constitute a written affirmation of fact or promise by CarMax that the material or workmanship of the vehicle or any parts thereof, are free of any defects or will meet a specified level of performance over a specified period of time.

This is the only express warranty made by CarMax. ANY AND ALL IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THIS WRITTEN LIMITED WARRANTY. No other warranty of any kind is made unless expressly provided herein. To the extent allowed by applicable law, CarMax shall not be liable for any damages relating to loss of use of the products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. All warranties are extended only to the original customer. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR EXCLUSIONS OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE. Prior written or oral statements, negotiations, communications or representations regarding warranties have been merged into or superceded by this writing, and if not included in this writing, they shall not be binding. This is the total agreement about any and all warranties relating to the product warranted hereunder. This Warranty Brochure is a part of the Buyer's Order, and as such is supplemented by the Buyer's Guide.

## Covered Parts

### Engine

Gasoline Engine -Cylinder block, and all internal lubricated parts including: crankshaft, rod and main bearings, cam bearings, expansion (freeze) plugs, connecting rods, wrist pins, pistons, piston rings, camshaft, cam tower, lifters, cylinder head, valves and guides, valve springs, rocker arms (cam followers), pushrods, timing chain housing (cover), timing chain and sprockets, timing belt and pulleys, timing belt tensioner, intake and exhaust manifolds, exhaust manifold cover, flywheel, balance shafts, harmonic balancer and retainer bolt, crankshaft pulley, valve covers, idle speed control, fuel pressure regulator, barometric pressure sensor, oxygen sensor, throttle position sensor, mass air flow sensor, idle air control solenoid, oil pan, oil pump and pressure relief valve, oil cooler, oil temperature sensor, air cleaner assembly, engine oil cooler hoses, oil filter adapter/housing, engine oil sending unit, motor mounts, water pump, water temperature sensor, temperature sending unit, thermostat and housing, sparkplugs, ignition wires, distributor cap and rotor, carburetor, EGR valve, filters, lubricants, fluids, belts and hoses, fuel supply pump, fuel pump control unit, fuel tank sensor, vacuum pump, vacuum control valve, vacuum switch, positive crankcase ventilation valve, dipstick and tube, seals and gaskets, fasteners for the components listed above.

Turbocharged/Supercharged/Rotary/Diesel/Enhanced Engines - All of the above listed parts or equivalent plus: turbocharger, waste gate controller, intercooler, hard lines, compressor, clutch and pulley, bypass valve, injection pump, diesel injection tube, pump gear, tensioner pulley, timing belt, and injection timing control, lines and nozzles, seals and gaskets.

### Transmission

Automatic - Case and all internal lubricated parts including: oil pump, valve body, torque converter, vacuum modulator, governor, main shaft, clutches, bands, drums, gear sets, bearings, bushings, sealing rings, TV cable, solenoids and electronic shift control unit, transmission front cover, transmission mounts, cooler, cooler hoses and hard lines, automatic transmission control unit, parking pawl, range select lever, dipstick and tube, seals and gaskets, fasteners for the components listed above.



Standard - Case and all internal lubricated parts including: main shaft, gear sets, shift forks, synchronizers, Friction Clutch Disc, pressure plate, clutch throw-out bearings, bearings, bushings, seals and gaskets, fasteners for the components listed above.

Transfer Case - (4X4 vehicles) - Case and all internal lubricated parts including: main shaft, gear sets, chain and sprockets, bearings, bushings, mounts, transfer relay, interlock control unit, seals and gaskets, fasteners for the components listed above, electronic and vacuum engagement components.

## Front Wheel Drive
Final drive housing and all internal parts including: carrier case, gear sets, chain and sprockets, bearings, bushings, axle shafts, constant velocity joints and boots, universal joints, front hub bearings, locking hub assemblies (4X4), drive shaft support, rear axle hub bearings, seals and gaskets, fasteners for the components listed above.

## Rear Wheel Drive
Drive axle housing and all internal lubricated parts including: carrier case, gear sets, bearings, bushings, limited slip clutch pack, axle shafts, axle hub bearings, propeller shafts, universal joints, drive shaft support, front axle hub bearings, rear cover 4WD, select switch, rear cover, differential case, control lever boot and socket, seals and gaskets, fasteners for the components listed above.

## Steering
Housing/case and all internal lubricated parts including: rack and pinion valve assembly, sector shaft, rack mounts and cushions, inner rod ends and bellows boots, speed sensor or steering gear equipped pitman arm and valve assembly, sealing rings, bearings, bushings, pitman arm, center link, tie rods, idler arm, power steering pump and pulley, fluid reservoir, pressure and return hoses, cooler and hard lines, power cylinder assembly, steering wheel, horn button assembly, steering gear arm, steering damper, steering lock, steering upper and lower collars, tilt lever, pump reservoir tank and tank cap, steering main and intermediate shafts, coupling, seals and gaskets, fasteners for the components listed above.

## Suspension
Steering angle sensor, front coil/leaf springs, MacPherson struts (includes upper mount and pivot bearing assembly), rear coil/leaf springs, upper and lower control arms, torque arm, adjustable shock support, shock absorbers, bump stop cushions, control arm shafts, torsion bar mounts and bushings, tension rod, bushing and bracket, panhard rod, upper and lower ball joints including: dust boots, steering knuckle (spindle), wheel bearings and seals, stabilizer shaft, stabilizer linkage including: mounts and bushings, strut rods and bushings, king pins, rear strut assembly, rear stabilizer, seals and gaskets, fasteners for the components listed above.

## Brakes
Master cylinder, assist booster, wheel cylinders, combination valve, disc brake calipers (and rear caliper actuators), caliper yoke, front baffle plate, back plate, adjuster assembly, level indicator, load sensing valve, anti-skid sensor assembly, rotor assembly sensor, hard lines and fittings, backing plates, springs, clips and retainers, self-adjusters, parking brake linkage and cables, rear cable adjuster, seals and gasket, brake pads and shoes, fasteners for the components listed above.

## Electrical
Alternator, voltage regulator, distributor, rear window defroster, speedometer cable, head lamp relay assembly, horn relay, ignition relay, head lamp dimmer relay assembly, interlock emergency switch, fuse block, flasher unit and relay, seat belt warning timer, retractable head lamp motor assembly, wiper arm, rear wiper arm, reverse lamp assembly, clock, windshield wiper motors and delay controller, wiper washer tanks (front/rear), starter motor and drive, starter solenoid, wiring harnesses, manually operated switches (such as turn signal, headlight, dimmer, and wiper switches), and mechanically actuated switches (ignition, brake light, and neutral safety switch), cruise control system, power seat motor(s) and transmission(s), power window motor(s) and power regulator(s), power door lock actuators, power trunk release actuator, and power antenna motor.

## Cooling System
Thermostat housing, fan blade, thermostat, radiator cap, radiator shroud, reservoir tank/bracket, thermal switch, coolant temperature sensor, coolant, radiator fan relay, blower motor timer.

## Air Conditioning
Relay, control, vacuum control switch, thermistor, compressor and mounting brackets, clutch and pulley, condenser, evaporator, orifice tube, POA valve, accumulator, temperature control programmer, radiator fan control amplifier, solenoid valve, automatic climate control sensors, shift actuator valve, power servo, acceleration cut timer, RPM sensor, high/low pressure cutoff switches, high/low pressure hoses, pressure cycling switch, thermostat, drier, temperature control head, o-ring seals, gaskets, fasteners for the components listed above, and refrigerant if necessary in conjunction with the repair of the components listed above.

## Electronic
Digital and analog instrument display(s), compass and thermometer display(s) low fuel sensor, low coolant sensor, low oil sensor, electronic rear view mirrors, keyless entry system, electronic fuel injection systems (specifically sensors, pressure regulators, fuel rails,

CMAX 00069

Certified Document Number: 4788903 l - Page 11 of 15

CMAX Tracking # 1919542          Repord #: Any

injectors, seals and gaskets), electronic fuel pump, electronic ignition module, distributor and coil, engine management control unit, power window regulator, alarm units, power units and sensors, knock sensor and oxygen sensor, electronic air suspension compressor.

Interior
Seat belt control unit, seat belt power unit, seat belt slide assembly, seat belt limit switch, air pump, slide assembly (power seat), lift assembly (power seat), automatic transmission range indicator.

Exterior
Glass, glass framework, fastening adhesives, trim, moldings, bright metal, upholstery, paint, sheet metal, body panels, structural frame work, and structural welds.

Assemblies & Controls
Accelerator pedal, bell crank assembly, 4WD skid guard, hood hinge, lock and lock cable, seat belt anchor stay, fueling stopper assembly; Front door hinge and lock, lock knob rod, remote control rod, lock striker and knob, lock cylinder, front outside handle, handle rod, front inside handle, front window regulator; Rear door hinge and lock assembly, remote control rod, lock striker, rear outside handle, handle rod, rear inside handle, rear window regulator, regulator handle, slide door lock assembly; Side window control assembly, remote control rod, side window control cable, regulator wire, slide door roller, slide door link, deck lid lock striker, lid opener cable, deck lid lock, trunk opener solenoid, deck lid hinge, deck lid torsion bar, back door lock and handle.

Other
This is just a partial listing of the Covered Parts. We will repair any part breakdown, except as indicated under the "Exclusions from Coverage" section below:

## Exclusions From Coverage
This Warranty does not cover or apply to:
1. Damage or breakdown caused by collision, fire, theft, vandalism, riot, explosion, or natural disaster.
2. Damage or breakdown due to vehicle/component abuse, misuse, or alteration.
3. Breakdown of aftermarket accessories or non-original equipment, components and systems not installed by the manufacturer (examples include: anti-theft systems, radio/speaker equipment, telephones, cruise control and sunroof).
4. Reduced operation/performance due to normal wear and tear of Covered Parts, including, but not limited to, valve grind(s) and/or piston ring replacement(s) designed to improve engine compression or reduce oil consumption.
5. Preventative maintenance services or parts replacement as suggested by the manufacturer in its maintenance schedule.
6. CarMax will not repair or replace any part or item, whether or not it is a Covered Part, unless it is required in conjunction with the repair or replacement of a Covered Part being serviced under this Warranty.
7. In the event a manufacturer's warranty or an extended service plan applies to a Covered Part, coverage under the warranty or plan shall be exhausted prior to being covered by this Warranty.

## Claim Procedure
In the event of a mechanical breakdown, Customer must follow these instructions:
A. Unless prior authorization is given, repair or replacement of Covered Parts must be performed at a CarMax store. Contact the CarMax store nearest you.
B. If a breakdown occurs within the Warranty Period and Customer is not within a reasonable distance from a CarMax store then Customer must contact CarMax immediately for the name and location of the nearest authorized repair facility. A prior authorization number will be assigned. This number is necessary to obtain reimbursement of payment of authorized repairs performed to the vehicle. Failure to obtain an authorization number may result in claim rejection. For Warranty information or authorizations, Customer may write or call CarMax at the address and phone number listed on your Buyer's Guide.
C. Noncompliance with the above requirements will invalidate Customer's ability to submit a claim for repair or replacement or to obtain any other remedy under this Warranty.
D. CarMax reserves the right to inspect any vehicle prior to authorization.
E. It shall be Customer's sole responsibility for repairs to be made to Customer's satisfaction, in accordance with the provisions of this Warranty.

## Miscellaneous
A. In the event CarMax elects to accept return of the vehicle, Customer will receive a refund of the purchase price paid less the Use Fee and other costs described in the Buyer's Order, and the cost of repairing the vehicle for any damage or other injury unrelated to the breakdown of a Covered Part covered by this Warranty.
B. In the event CarMax elects to accept return of the vehicle, if a vehicle was sold to CarMax as a trade-in in connection with Customer's purchase of the vehicle, Customer agrees to receive the value of the trade-in equity in cash or a cash equivalent, except as prohibited by applicable law.



CMAX 00070

## We Buy Cars!

**Vehicle: 2005 LEXUS RX 330**

- FREE Appraisal
- Written Offer Good for 7 Days
- We'll Buy Your Car, Even if You Don't Buy Ours

Body Style: 4D SPORT UTILITY

Mileage: 45K

Color: BLACK

Interior: BLACK LEATHER

VIN: 2T2HA31U05C054670

Stock #: 5763204

 **Reviews and Awards**

- Named a Best New Truck by AMI Auto World Magazine
- A Consumer Guide 2005 Best Buy
- Consumer Guide 2005 reports RX 330 an appealing blend of comfort, refinement, luxury and build quality

| | |
|---|---|
| ABS BRAKES | AIR BAG(S) |
| AIR CONDITIONING | ALLOY WHEELS |
| AM/FM STEREO | AUTOMATIC TRANSMISSION |
| CASSETTE PLAYER | CRUISE CONTROL |
| DUAL POWER SEATS | FRONT CD CHANGER |
| FRONT SEAT HEATERS | FULL ROOF RACK |
| LEATHER SEATS | MEMORY SEAT(S) |
| OVER-HEAD AIRBAGS | POWER HATCH/DECKLID |
| POWER LOCKS | POWER MIRRORS |
| POWER STEERING | POWER WINDOWS |
| REAR DEFROSTER | SIDE AIRBAGS |
| SUNROOF | TRACTION CONTROL |

PRIOR USE: FLEET

Optional MaxCare Extended Service Plan available, up to 60 months or 60,000 miles.

While we've done our best to accurately list this vehicle's features, we request you verify the features listed as CarMax® is not liable for discrepancies

7111 - SA8

**Engine**

| | |
|---|---|
| EPA Mileage (city/high): | 19/25 |
| Cylinders: | 6 Cylinders |
| Displacement: | 3.3L Engine |
| Horsepower: | 230 @5600 |



## $22,849

This price excludes tax, title, tags, and $49 documentary fee (not required by law).



DEFENDANT'S EXHIBIT
B-5

# MECHANICAL REPAIR AGREEMENT

## INFORMATION SCHEDULE

### 1. Covered Vehicle    CUSTOMER NO. 451027    AGREEMENT NO. 71111165569

VIN: 2 7 2 H A 3 1 U 0 5 C 0 5 4 6 7 0

| MAKE LEXUS | MODEL RX 330 | | YEAR 2 0 0 5 | ODOMETER 44,935 |
|---|---|---|---|---|

| CAR CODE 1 6 1 4 9 | CAR CLASS 00011 | USED [X] | CAR [X] TRUCK [ ] | DIESEL Y[ ] N[X] | 4x4 Y[ ] N[X] | TURBO Y[ ] N[X] |

### 2. Customer

| NAME HOA TU LY | STREET 13005 LEADER ST | | |
|---|---|---|---|
| CITY HOUSTON | STATE TX | ZIP 77072 | TELEPHONE HM( 713 )899-3313  WK( ) |

### 3. Agreement Period

THE COVERAGE PROVIDED UNDER THIS AGREEMENT SHALL BEGIN ON THE DATE ISSUED (SEE KEY TERMS) AND SHALL END ON

**36** MONTHS FROM THE DATE ISSUED, OR WHEN | 1 3 6 0 0 0 (THOUSAND) ADDITIONAL MILES ARE REGISTERED ON THE

ODOMETER, WHICHEVER OCCURS FIRST. IMPORTANT NOTICE: BENEFITS PROVIDED UNDER DEALER WARRANTIES REQUIRED BY STATE LAW ARE NOT COVERED BY THIS AGREEMENT.

### 4. Agreement Coverages

I. MECHANICAL BREAKDOWN
COST OF COVERED REPAIR LESS
YOUR DEDUCTIBLE.
(Covered air conditioning conversion to R-134a
refrigerant not to exceed $400)

II. CAR RENTAL EXPENSE
NOT TO EXCEED $25 PER DAY FOR A
MAXIMUM OF 7 DAYS.

III. TOWING REIMBURSEMENT
NOT TO EXCEED $50 PER DISABLEMENT

COVERAGE PLAN:

MAXCARE
PLAN [X]

$75 STANDARD DEDUCTIBLE

The deductible reduces to $50 if covered repairs are performed at a
Carmax Auto Superstore

### 5. Agreement Charge

MECHANICAL REPAIR AGREEMENT CHARGE:    $ 1 6 4 9 . 0 0

### 6. Dealer

| DEALER NUMBER 7111 | NAME CarMax Auto Superstores, Inc. | STREET 6909 SOUTHWEST FREEWAY | DEPT # |
|---|---|---|---|
| CITY HOUSTON | STATE TX | ZIP 77074 | TELEPHONE ( 713 ) 774-3400 |

### 7. Lienholder

THE UNDERSIGNED HOLDER OF THIS AGREEMENT HEREBY AUTHORIZE THE FOLLOWING LENDER: 1. TO RECEIVE ANY REFUND FOR CREDIT
TO MY ACCOUNT IN THE EVENT THIS AGREEMENT IS CANCELED; AND 2. TO CANCEL THIS AGREEMENT IN THE EVENT I DEFAULT IN MY
OBLIGATION TO SUCH LENDER.

PO BOX 53439

NAME Wells Fargo Bank, N.A.    ADDRESS PHOENIX, AZ 85072-3439

| DATE ISSUED | 05 MONTH | 22 DAY | 2009 YEAR | IN-SERVICE DATE | 05 MONTH | 22 DAY | 2009 YEAR |
|---|---|---|---|---|---|---|---|

SIGNED BY _____ CUSTOMER    SIGNED BY _____ DEALER'S REPRESENTATIVE

NOTICE TO CUSTOMER: YOU ARE REQUIRED TO OBTAIN AUTHORIZATION PRIOR TO BEGINNING ANY REPAIRS COVERED BY THIS
AGREEMENT. REFER TO AGREEMENT SECTION "YOUR RESPONSIBILITIES IF YOU HAVE A BREAKDOWN" FOR INSTRUCTIONS.

CUSTOMER COPY    MAX-33 (04/04)

Certified Document Number: 47889031 - Page 14 of 15



DEFENDANT'S
EXHIBIT
B-6

OMS Tracking # 1919544        Reprint # Any                                                                                                        05/25/2005 09 29 pm  1 of 1

## MECHANICAL REPAIR AGREEMENT

This form describes the protection you will have under your Mechanical Repair Agreement (hereafter referred to as "Agreement"). In return for payment by you of the Agreement Charge and subject to all the terms of this Agreement, we agree with you as follows:

**KEY TERMS** (when used, Key Terms will appear in dark print)

"**Vehicle**" means the covered car or truck shown in Section 1 on the Information Schedule.

"**You**" and "**your**" mean the customer (private individual) shown in Section 2 on the Information Schedule, or a person to whom this Agreement may be and is properly transferred.

"**Provider**", "**we**", "**us**" and "**our**" mean Consumer Program Administrators, Inc.

"**Breakdown**" or "**Mechanical Breakdown**" means the failure of any original or like replacement part covered by this Agreement to perform its intended function(s) in normal service, providing it has received customary maintenance as recommended under **Maintenance Requirements** as shown in this Agreement or in the Manufacturer's Maintenance Schedule for your vehicle. Breakdown or mechanical breakdown does not include the gradual reduction in operating performance caused by wear and tear where a failure has not occurred except as specifically noted on any covered part.

"**Odometer Miles**" means the actual miles your vehicle has traveled as recorded on an unaltered odometer.

"**Cost**" means the usual and fair charges for parts and labor necessary to repair or replace the parts covered. These charges shall not exceed manufacturer's suggested retail price for parts, and labor allowances derived from nationally recognized labor time standards.

At our discretion, replacement parts used in covered repairs may include non-original equipment manufacturer parts, new, remanufactured, or used parts that meet the quality standards of the repairer or us.

"**Warranty**" means any warranty of the manufacturer, state required dealer warranty, or a repairer's guarantee.

"**Deductible**" means the amount that you must pay for covered repairs per visit. The standard deductible is $75. However, if you return to a Carmax Auto Superstore, the deductible is $50. If your cost is a warranty deductible charge imposed by the manufacturer, this Agreement will pay all such charges.

"**In-Service Date**" means the vehicle's factory warranty start date or the vehicle's first day of use, whichever occurs first, regardless of the Date Issued.

"**Date Issued**" means the date you purchased this Agreement.

"**Repairer**" means a franchised automobile dealer or repair facility that provides a written parts and labor guarantee for covered repairs of not less than 6 months and 6,000 miles. Repairs performed by any facility must receive authorization from Consumer Program Administrators, Inc. prior to beginning repairs.

## WHAT THIS AGREEMENT COVERS

**Coverage I – Mechanical Breakdown**

During the Agreement Period, at our option we will pay you or a repairer the cost to remedy any breakdown of your vehicle less your deductible except for items listed under the section titled **WHAT THIS AGREEMENT DOES NOT COVER**.

At our discretion, replacement parts used in covered repairs may include non-original equipment manufacturer parts, new, remanufactured, or used parts that meet the quality standards of the repairer or us.

**MAXCARE COVERAGE** - The following parts are examples of parts covered.

**ENGINE ASSEMBLY**

Gasoline Engine - Cylinder block, and all internal lubricated parts including: crankshaft, rod and main bearings, cam bearings, expansion (freeze) plugs, connecting rods, wrist pins, pistons, piston rings, camshaft, cam tower, lifters, cylinder head, valves and guides, valve springs, rocker arms (cam followers), pushrods, timing chain housing (cover), timing chain and sprockets, timing belt and pulleys, timing belt tensioner, intake and exhaust manifolds, flywheel, balance shafts, harmonic balancer and retainer bolt, crankshaft pulley, valve covers, oil pan, oil pump and pressure relief valve, engine oil cooler hoses, oil filter adapter/housing, engine oil sending unit, engine mounts, water pump, temperature sending unit, thermostat and housing, fuel supply pump, vacuum pump, dipstick and tube, seals and gaskets, fasteners for the components listed above.

Turbocharged/Supercharged/Rotary/Diesel/Enhanced Engines - All of the above listed parts or equivalent, plus: turbocharger, waste gate controller, intercooler, hard lines, compressor, clutch and pulley, bypass valve, injection pump, lines and nozzles, seals and gaskets.

**TRANSMISSION ASSEMBLY**

Automatic - Case and all internal lubricated parts including: oil pump, valve body, torque converter, vacuum modulator, governor, main shaft, clutches, bands, drums, gear sets, bearings, bushings, sealing rings, TV cable, solenoids, electronic shift control unit, transmission mounts, cooler, cooler hoses and hard lines, dipstick and tube, seals and gaskets, fasteners for the components listed above.

Standard - Case and all internal lubricated parts including: main shaft, gear sets, shift forks, synchronizers, bearings, bushings, seals and gaskets, fasteners for the components listed above.

Transfer Case - (4X4 vehicles) - Case and all internal lubricated parts including: main shaft, gear sets, chain and sprockets, bearings, bushings, mounts, seals and gaskets, fasteners for the components listed above, electronic and vacuum engagement components.

**FRONT WHEEL DRIVE ASSEMBLY**

Final drive housing, and all internal parts including: carrier case, gear sets, chain and sprockets, bearings, bushings, axle shafts, constant velocity joints and boots, universal joints, front hub bearings, locking hub assemblies (4X4), drive shaft support, rear axle hub bearings, seals and gaskets, fasteners for the components listed above.

**REAR WHEEL DRIVE ASSEMBLY**

Drive axle housing, and all internal lubricated parts including: carrier case, gear sets, bearings, bushings, limited slip clutch pack, axle shafts, axle hub bearings, propeller shafts, universal joints, drive shaft support, front axle hub bearings, seals and gaskets, fasteners for the components listed above.

**STEERING ASSEMBLY**

Housing/case and all internal lubricated parts including: rack and pinion equipped valve assembly, sector shaft, racks mounts and cushions, inner rod ends and bellows boots, speed sensor or steering gear equipped pitman shaft and valve assembly, sealing rings, bearings, bushings, pitman arm, center link, tie rods, idler arm, power steering pump and pulley, fluid reservoir, pressure and return hoses, cooler and hard lines, power cylinder assembly, steering main and intermediate shafts, coupling, seals and gaskets, fasteners for the components listed above. (Does not include "rear wheel steering" components.)

**FRONT SUSPENSION ASSEMBLY**

MacPherson struts (includes upper mount and pivot bearing assembly), upper and lower control arms, bump stop cushions, control arm shafts, torsion bar mounts and bushings, upper and lower ball joints, dust boots, steering knuckle (spindle), wheel bearings and seals, stabilizer shaft, stabilizer linkage including; mounts and bushings, strut rods and bushings, king pins, seals and gaskets, fasteners for the components listed above.

**BRAKES ASSEMBLY**

Master cylinder, assist booster, wheel cylinders, combination valve, disc brake calipers (and rear caliper actuators), hard lines and fittings, backing plates, springs, clips and retainers, self-adjusters, parking brake linkage and cables, seals and gaskets, fasteners for the components listed above.

Page 1



MAX-33 (04/04)

**CMAX 00029**

Certified Document Number: 47889031 - Page 15 of 15



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:         47889031 Total Pages:  15

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**ELECTRICAL ASSEMBLY**
Alternator, voltage regulator, windshield wiper motors and delay controller, starter motor and drive, starter solenoid, wiring harnesses, manually operated switches (such as turn signal, headlight, dimmer, and wiper switches), mechanically actuated switches (ignition, brake light, and neutral safety switch), electronic fuel injection system (including all input/sensors and output/control units, except EGR valves, related to the fuel injection system), electronic ignition module, distributor and coil, engine management control unit, knock sensor and oxygen sensor.

**AIR CONDITIONING ASSEMBLY**
Compressor and mounting brackets, clutch and pulley, condenser, evaporator, orifice tube, POA valve, accumulator, temperature control programmer, high/low pressure cutoff switches, high/low pressure hoses, pressure cycling switch, thermostat, drier, temperature control head, o-ring seals, gaskets, fasteners for the components listed above, and freon-refrigerant if necessary in conjunction with the repair of the components listed above.

**COOLING SYSTEM ASSEMBLY**
Thermostat housing, fan blade, thermostat, radiator cap, radiator shroud, reservoir tank/bracket, thermal switch, coolant temperature sensor, radiator fan relay, blower motor timer.

**INTERIOR ASSEMBLY**
Seat belt control unit, seat belt power unit, seat belt slide assembly, seat belt limit switch, air pump, slide assembly (power seat), lift assembly (power seat), automatic transmission range indicator.

**ASSEMBLIES AND CONTROLS**
Accelerator pedal, bell crank assembly, 4WD skid guard, hood hinge, lock and lock cable, seat belt anchor stay, fueling stopper assembly; Front door hinge and lock assembly, lock knob rod, remote control rod, lock striker and knob, lock cylinder, front outside handle, handle rod, front inside handle, front window regulator; Rear door hinge and lock assembly, remote control rod, lock striker, rear outside handle, handle rod, rear inside handle, rear window regulator, regulator handle, slide door lock assembly; Side window control assembly, remote control rod, side window control cable, regulator wire, slide door roller, slide door link, deck lid lock striker, lid opener cable, deck lid lock, trunk opener solenoid, deck lid hinge, deck lip torsion bar, back door lock and handle. In the event that R-12 (freon) is not available at the time of a covered air conditioning failure, we will pay up to a limit of the amount shown in Section 4 of the Information Schedule to convert the existing system to a type compatible for use with the CFC Free type R-134a refrigerant.

Coverage II – Car Rental Expense
When a breakdown renders your vehicle inoperable or unsafe to drive and requires your vehicle to be held by a repairer overnight for covered repairs, we will pay your actual expenses to rent a replacement car from a licensed rental agency up to the maximum amounts shown in Section 4 of the Information Schedule for any one breakdown.

Coverage III – Towing And Road Service
When a covered breakdown disables your vehicle, we will pay for towing and emergency road service up to a limit of the amount shown in Section 4 of the Information Schedule, provided such labor is performed at the scene of the disablement.

**WHAT THIS AGREEMENT DOES NOT COVER**
Under Coverage I, we will not pay for costs covered by any warranty of the manufacturer, state required dealer warranty, or a repairer's guarantee regardless of whether they honor such warranty or guarantee.
Maintenance and Parts Not Covered
The following are not covered under your Agreement:
1. The maintenance services and parts described under Maintenance Requirements as shown in this Agreement or in the Manufacturer's Maintenance Schedule for your vehicle. If you do not receive a maintenance manual at the time of purchase it is your responsibility to obtain a manual and follow its guidelines. See your selling dealer to learn how to obtain a manual for your vehicle.
2. Other normal maintenance services and parts including engine tune-up (Includes spark plugs, glow plugs, ignition wires, distributor cap and rotor), carburetor, throttle body assembly (except injectors), batteries, filters, lubricants or fluids, air conditioning refrigerant, engine coolant, all hoses and belts (not specifically listed), wiper blades, brake pads and shoes, brake rotors and drums, suspension alignment, tires, wheel covers, wheel rims, wheels, wheel balancing, shock absorbers, exhaust system, friction clutch disc and pressure plate, and clutch throw out
3. Glass, glass framework, fastening adhesives, sealed beam head lamps, light bulbs, lenses, trim, moldings, bright metal, upholstery, vinyl and convertible tops, paint, sheet metal, bumpers, alignment of body parts, flexible body parts, door panels, body panels, structural framework, structural welds, and removable hardtop assemblies.
4. Solar powered devices, telephones, TV/VCR and related components (unless it is a CarMax approved vendor installed accessory purchased through CarMax at the time of vehicle purchase), and appliances.
5. After market accessories, unless it is a CarMax approved vendor installed accessory purchased through CarMax at the time of vehicle purchase, or non-original equipment, components and systems not installed by the manufacturer, examples include: anti-theft systems, radar detectors, CB radios, radio/speaker equipment, telephones, cruise control and sun roof.

In addition, we will not pay benefits:
- When repairs are performed without prior authorization.
- For expenses charged for the disposal of environmentally unsafe materials.
- For expenses charged for non-specific materials or shop supplies.
- For a breakdown caused by or involving collision, fire, theft, vandalism, riot, war, explosion, lightning, earthquake, volcanic eruption, windstorm, hail, water, freezing, or flood.
- For loss of time, economic loss, inconvenience, lodging, food, freight charges, storage charges, or other consequential loss or damage that resulted from a breakdown.
- For a breakdown when the use of contaminated fluids caused or contributed to the breakdown.
- For a breakdown specifically caused by your failure to maintain proper levels or specification (type) fluids and the improper type or level of fluid contributed to the failure. This includes your failure to observe the manufacturers maintenance manual instructions regarding warning devices or any documented warnings provided by a qualified repairer.
- If your vehicle is a non-U.S. specification model.
- For a breakdown caused by towing a trailer or another vehicle unless your vehicle is equipped for this as recommended by the manufacturer.
- For a breakdown caused by using your vehicle for racing or other competition.

MAX-33 (04/04)

Page 2

CMAX 00030

DMS Tracking #: 1919545          Reprint #: Any                                                                                                                                05/25/2009 09:29 pm  1 of 1

- For a breakdown caused by or involving modifications unless those modifications were performed by the manufacturer. (e.g. oversized tires, lift kits, after market performance parts or systems)
- If your vehicle has been modified to plow snow, whether the snowplow blade is attached to your vehicle or not.
- For any consequential or incidental damage or loss should your vehicle be involved in a collision caused by or involving a breakdown of a component covered by this Agreement.
- For the repair of valves and/or rings for the purpose of raising the engine's compression when a breakdown has not occurred except in cases when OEM specifications are exceeded.
- To correct a cosmetic imperfection.
- For a breakdown caused by abuse, misuse, alterations (which includes tires 2 sizes larger than manufacturer specifications), or lack of customary maintenance as recommended under **Maintenance Requirements** as shown in this Agreement or in the Manufacturer's Maintenance Schedule for your vehicle.
- For a breakdown caused by rust or weather related corrosion.
- For a breakdown of a covered part resulting from the failure of a non-covered part.
- If your vehicle is used for commercial purposes or a truck rated more than 1 ton. Examples of commercial use are: taxi, police car or emergency vehicle, hauling, construction (other than driving to and from work), pick-up and delivery service, company pool use or business travel when the vehicle is used by more than one driver, daily rentals, carry passengers for hire, snowplowing.
- For a breakdown caused by or involving non-original manufacturer equipment, components or systems.
- If your vehicle's odometer has been stopped, altered or misrepresents your vehicle's actual mileage.
- To repair, replace, adjust or align any part not covered by this Agreement unless required in conjunction with the repair of a covered part.
- For a breakdown which existed prior to, or was caused by a condition which existed prior to the Date Issued.
- For diagnosis charges, cost of disassembly or assembly if coverage cannot be applied.
- For additional loss or damage which is occasioned by the contract holder or operator's failure to use all reasonable precautions to protect the vehicle from any further loss or damage after a mechanical breakdown or failure has occurred or been indicated.
- For repairs made solely to meet or maintain governmental emissions standards.
- For damage caused to your engine resulting from the ingestion of water through the engine air intake system (commonly referred to as water ingestion).
- For repairs of water and air leaks, rattles, squeaks and wind noise.
- If your vehicle is powered entirely by an alternate fuel source. (e.g. solar, electric, and fossil fuels)

## MAINTENANCE REQUIREMENTS
In order to keep your Mechanical Repair Agreement valid, you must follow the maintenance procedures listed below. If your failure to follow these procedures causes a breakdown, you may be denied coverage.
You must have your vehicle serviced following all manufacturers recommended service intervals.
1.  Change engine oil and filter.
2.  Check and maintain transmission fluid level.
3.  Check and maintain drive axle fluid level.
4.  Lubricate front suspension.
5.  Check and maintain the proper level of coolant.
6.  Follow all recommendations of the manufacturer regarding other special services.
You must keep receipts which verify the Vehicle Identification Number, work orders and other documentation that shows a date, a description of your vehicle, mileage and services performed. We may require you to furnish us with proof that the specified services have been performed. Failure to show proof of servicing may result in the denial of coverage.

## WHO TO CALL IF YOU HAVE A BREAKDOWN
All breakdowns must be reported promptly to the Dealer from whom you purchased this Agreement, or if you have moved or are traveling out of town:

**Consumer Program Administrators, Inc.**
**Call toll-free 1-800-731-2834;**
**Monday through Friday 7:00AM – 7:00PM Central Time**

## YOUR RESPONSIBILITIES IF YOU HAVE A BREAKDOWN
If you experience a breakdown you agree to:
- Use all reasonable means to protect your vehicle from further damage.
- Notify us as soon as possible, if you are unable to return to the Dealer from whom you purchased this Agreement.
- Authorize the repair facility to perform necessary diagnostic work and provide "teardown authorization" so that the repair facility can provide an accurate diagnosis and estimate of repairs. IMPORTANT: MECHANICAL REPAIR COVERAGE DOES NOT PAY FOR DIAGNOSIS CHARGES FOR REPAIRS NOT COVERED UNDER THIS AGREEMENT.
- Furnish us with such information as we may reasonably require, and if requested provide proof of your vehicle's regular maintenance during the Agreement Period as recommended under **Maintenance Requirements** as shown in this Agreement or in the Manufacturer's Maintenance Schedule for your vehicle.
- Reserve us the right to refer your vehicle to the selling dealer, or a dealership that sells and services your type of vehicle, for certain repairs.
- Allow us to examine your vehicle if we ask to do so.
- Obtain authorization from Consumer Program Administrators, Inc. prior to beginning any repairs covered by this Agreement.
- If you have a breakdown on a weekend or holiday, please call the following business day to receive further instructions. Customer service hours are 7:00 AM - 7:00 PM (Central Time) Monday through Friday.

MAX-33 (04/04)

Certified Document Number: 47889029 - Page 2 of 15

**CMAX 00031**

GENERAL PROVISIONS

1.  **Agreement Period**
    The term of this Agreement varies based upon the time and mileage for which it is issued. The term begins on the Date Issued and odometer reading stated on the Information Schedule. The term expires when its time or mileage limit is reached.

2.  **When And Where You Are Covered**
    You are covered when this Agreement is issued or transferred to you. This Agreement applies only to breakdowns occurring within the United States of America, its territories or possessions and Canada.

3.  **If You Have Other Coverage**
    If the manufacturer or repairer agrees to cover all or some of the cost of a breakdown after a warranty or guarantee has expired, we will pay only for any extra cost.

4.  **Your Help And Cooperation**
    Your help and cooperation is required. If we ask, you agree to help us enforce your rights against any manufacturer or repairer who may be responsible to you for the cost of repairs covered by this Agreement.

5.  **Limit of Liability**
    Our limit of liability is the cost to repair or replace any covered breakdown; but in no event shall this cost exceed the average retail value of your vehicle as determined by the NADA (Official Used Car Guide) at the time of loss.

6.  **Subrogation**
    If we pay for a loss, we may require you to assign us your rights of recovery against others. We will not pay for a loss if you impair these rights to recover. Your rights to recover from others may not be waived.

7.  **Arbitration**
    In the event of a disagreement between you and us concerning costs, either of us may make a written demand for arbitration. This must be done within 60 days after the day you filed your claim. Each of us will select an appraiser. The two appraisers will select an umpire. Each of us will pay the expenses of the appraiser we select. The expenses of the umpire will be shared equally. Unless both of us agree otherwise, arbitration will take place in the county and state in which you live. Local rules apply. A majority decision will be binding.

8.  **How This Agreement May Be Transferred**
    Your rights and duties under this Agreement may only be transferred to a subsequent purchaser (excluding dealer trade-in) directly by you, within 30 days from the date of sale to the subsequent owner and upon payment to us of a $30 transfer fee. This Agreement can only be transferred if the remaining portion of the original manufacturer warranty is also transferred. In the event of your death, the benefits of this Agreement will be available to your spouse or legal representative.

9.  **How This Agreement May Be Canceled - Including Refunds And Charges**
    **Cancellation By You**
    You may cancel this Agreement at any time. To cancel, you must mail this Agreement to us, provide written notice to us, return the Agreement to your selling dealership or mail to your selling dealership. If you cancel this Agreement within ninety (90) days of the Date Issued, and you have not incurred a claim, a 100% refund of the Agreement Charge will be made less a $30 administrative fee. If you cancel this Agreement after ninety (90) days, a pro-rata refund will be made based upon the greater of the time or mileage used, less an administrative fee of $30. All refunds will be paid to you or to the lienholder if applicable.
    **Cancellation By Us**
    We may cancel this Agreement for any reason within ninety (90) days of the Date Issued. If we cancel this Agreement during the first ninety (90) days, a pro-rata refund will be made based upon the greater of the time or mileage used.
    After ninety (90) days, we may cancel this Agreement:
    - If there has been a material misrepresentation or fraud at the time of sale of this Agreement;
    - If you have failed to maintain your vehicle as prescribed by the manufacturer;
    - If the odometer has been tampered with or disabled and you have failed to repair the odometer; or
    - If you do not pay the Agreement Charge.
    If we cancel this Agreement after ninety (90) days, a pro-rata refund will be made based upon the greater of the time or mileage used, less an administrative fee of $30. All refunds will be paid to you or to the lienholder if applicable.
    If this Agreement is financed, and your vehicle is a total loss or is repossessed, you authorize your lienholder (shown in Section 7 of the Information Schedule) to cancel this Agreement and receive the refund.

10. **Insurance**
    The obligations of the Provider under this Agreement are insured under an Insurance Policy issued by Virginia Surety Company, Inc., 1000 Milwaukee Avenue, Glenview, Illinois 60025.

11. **Entire Agreement**
    This Agreement represents the entire agreement between you and us. No person has the authority to change this Agreement or to waive any of its provisions. No other written or oral statements apply to this Agreement.

MAX-33 (04/04)

Certified Document Number: 47889029 - Page 3 of 15

**CMAX 00032**

DMS Tracking # 1919548    Reprint #: Any                                                                    05/25/2009 09:29 pm  1 of 1

## STATE AMENDMENTS
This Agreement is amended to comply with the following state requirements:

### Alabama
GENERAL PROVISIONS - Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:
How the Original Purchaser May Cancel This Agreement During the "Free-Look" Period
If you cancel this Agreement within twenty (20) days of receipt of this Agreement and have not incurred a claim, this Agreement shall be void and you will receive a full refund of the Agreement Charge. A ten percent (10%) penalty per month shall be added to a refund that is not made within forty-five (45) days of return of this Agreement to us. The provisions of this paragraph only apply to the original purchaser of this Agreement. The refund will be paid to you or to the lienholder if applicable.
If this Agreement is canceled after the "Free-Look" Period, the administrative fee is $25.
If we cancel this Agreement, we will mail you written notice five (5) days prior to cancellation.

### California
GENERAL PROVISIONS - Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:
How the Original Purchaser May Cancel This Agreement During the "Free Look" Period
If you cancel this Agreement within sixty (60) days of the Date Issued and you have not incurred a claim, you will receive 100% of the Agreement Charge. If this Agreement is canceled after sixty (60) days of the Date Issued, a pro-rata refund will be made based upon the greater of the time or mileage used, less an administrative fee of $25 or 10%, whichever is less.

### Connecticut
The coverage afforded by this Agreement is still available should the Agreement Period lapse while your vehicle is in the custody of a repairer for a covered repair.
GENERAL PROVISIONS – Section 7 "Arbitration" is amended to include: "Resolution of Disputes"
The State of Connecticut has established an arbitration process to settle disputes between you and us arising from extended warranty contracts. A written complaint may be mailed to: State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0186, Attention: Consumer Affairs. The written complaint must contain a description of the dispute, the purchase price of the product, the cost of repair of the product and a copy of this Agreement.

### Georgia
WHAT THIS AGREEMENT DOES NOT COVER – is amended to include:
The exclusion "If your vehicle is used for commercial purposes..." is revised to read "If your vehicle is used for commercial purposes or is a truck rated more than 1 ton. Examples of commercial use are: taxi, police care or emergency vehicle, hauling, construction (other than driving to and from work), pick up, company pool use or business travel when the vehicle is used by more than one driver, daily rentals, carry passengers for hire, snowplowing. "
The exclusion "For a breakdown which existed prior to, or was caused by a condition which existed prior to the Date Issued." is deleted in its entirety.
The exclusion "If your vehicle's odometer has been stopped..." is revised to read "If, while owned by you, your vehicle's odometer has been stopped, altered or misrepresents your vehicle's actual mileage."
YOUR RESPONSIBILITIES IF YOU HAVE A BREAKDOWN – is amended to include:
The bullet point "Authorize the repair facility to perform necessary diagnostic work..." is deleted in its entirety.
GENERAL PROVISIONS – Section 7 "Arbitration" is deleted in its entirety.
GENERAL PROVISIONS – Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is deleted in its entirety and replaced by the following:
9. How This Agreement May Be Canceled – Including Refunds And Charges .
Cancellation By You
You, or a person authorized by you, may cancel this Agreement at any time. To cancel, you must mail this Agreement to us or provide written notice to us. If you cancel this Agreement, you will receive 90% of the unearned pro-rata Agreement Charge. The refund will be paid to you or to the lienholder if applicable.
Cancellation By Us
We may cancel this Agreement:
- In the event of fraud;
- In the event of material misrepresentation; or
- If you do not pay the Agreement Charge.
If we cancel this Agreement, we will mail you written notice:
- At least ten (10) days prior to the effective date of cancellation if you do not pay the Agreement Charge; or
- At least thirty (30) days prior to the effective date of cancellation for fraud or material misrepresentation.
If we cancel this Agreement, you will receive 100% of the unearned pro-rata Agreement Charge. The refund will be paid to you or to the lienholder if applicable.
If this Agreement is financed and your vehicle is a total loss or is repossessed, you authorize your lienholder (shown in Section 7 of the Information Schedule) to cancel this Agreement and receive the refund.
Should we fail to refund the unearned consideration, you have the right to receive the refund directly from Virginia Surety Company, Inc.

### Idaho
Coverage afforded under this Agreement is not guaranteed by the Idaho Insurance Guarantee Association.

### Illinois
GENERAL PROVISIONS – Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:
If you cancel this Agreement within ninety (90) days of the Date Issued, the administrative fee is $30 or 10% of the Agreement Charge, whichever is less. If this Agreement is canceled after ninety (90) days of the Date Issued, the administrative fee is $30 or 10% of the pro-rata refund, whichever is less.

### Indiana
Your proof of payment to the issuing dealer for this Agreement shall be considered proof of payment to the insurance company, which guarantees our obligation to you, providing such insurance was in effect at the time you purchased this Agreement.

MAX-33 (04/04)

CMAX 00033

Certified Document Number: 47889029 - Page 4 of 15

## Iowa

If you have questions regarding your Agreement, you may address them to the Iowa Insurance Commissioner at the following address:

Iowa Insurance Department
330 Maple Street
Des Moines, Iowa 50319-0065

## Louisiana

All references to Consumer Program Administrators, Inc. are deleted and replaced by the following:

Automotive Warranty Services of Florida, Inc.
5050 North Broadway
Chicago, Illinois 60640

## Maryland

GENERAL PROVISIONS - Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:

How the Original Purchaser May Cancel This Agreement During the "Free-Look" Period

If you cancel this Agreement within twenty (20) days of receipt of this Agreement and have not incurred a claim, this Agreement shall be void and you will receive a full refund of the Agreement Charge. A ten percent (10%) penalty per month shall be added to a refund that is not made within forty-five (45) days of return of this Agreement to us. The provisions of this paragraph only apply to the original purchaser of this Agreement. The refund will be paid to you or to the lienholder if applicable.

## Massachusetts

The following wording is added:

NOTICE TO CUSTOMER: THE COVERAGE YOU ARE BUYING IS NOT REQUIRED IN ORDER TO REGISTER OR FINANCE A VEHICLE. THE BENEFITS PROVIDED MAY DUPLICATE EXPRESS MANUFACTURER'S OR SELLER'S WARRANTIES THAT COME AUTOMATICALLY WITH EVERY SALE. YOU CAN BE REQUIRED BY THE SELLER OF THIS COVERAGE TO PURSUE THOSE WARRANTIES WHICH ARE AVAILABLE TO YOU WITHOUT THIS CONTRACT.

## Mississippi

GENERAL PROVISIONS – Section 7 "Arbitration" is deleted in its entirety.

## Nevada

GENERAL PROVISIONS – Section 1 "Agreement Period" is amended to include:

This Agreement is not renewable.

GENERAL PROVISIONS – Section 9 "How This Agreement May Be Canceled -- Including Refunds And Charges" is amended to include:

How the Original Purchaser May Cancel This Agreement During the "Free-Look" Period

If you cancel this Agreement within twenty (20) days of receipt of this Agreement and have not incurred a claim, this Agreement shall be void and you will receive a full refund of the Agreement Charge. A ten percent (10%) penalty per month shall be added to a refund that is not made within forty-five (45) days of return of this Agreement to us. The provisions of this paragraph only apply to the original purchaser of this Agreement. The refund will be paid to you or to the lienholder if applicable.

If we cancel this Agreement, the administration fee is not applicable and we will mail you written notice fifteen (15) days prior to cancellation. The ninety (90) day cancellation time period is replaced with seventy (70) days.

## New Mexico

GENERAL PROVISIONS – Section 1 "Agreement Period" is amended to include:

This Agreement is not renewable.

GENERAL PROVISIONS – Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is deleted in its entirety and replaced with the following:

9. How This Agreement May Be Canceled – Including Refunds and Charges

How the Original Purchaser May Cancel This Agreement During the "Free-Look" Period

If you cancel this Agreement within twenty (20) days of receipt of this Agreement and have not incurred a claim, this Agreement will be void and you will receive a full refund of the Agreement Charge. A ten percent (10%) penalty per month shall be added to any refund that is not made within sixty (60) days of the return of this Agreement to us. The provisions of this paragraph only apply to the original purchaser of this Agreement. The refund will be paid to you or to the lienholder if applicable.

### Cancellation By You

You may cancel this Agreement at any time. To cancel, you must mail this Agreement to us or provide written notice to us. If you cancel this Agreement within seventy (70) days of the Date Issued and you have not incurred a claim, a 100% refund of the Agreement Charge will be made less an administrative fee of $30. After seventy (70) days, a pro-rata refund will be made based upon the greater of the time or mileage used, less an administrative fee of $30. All refunds will be paid to you or to the lienholder if applicable.

### Cancellation By Us

We will mail you written notice at least fifteen (15) days prior to cancellation. We may cancel this Agreement for any reason within the first seventy (70) days of the Date Issued. If we cancel this Agreement during the first seventy (70) days, a pro-rata refund will be made based upon the greater time or mileage used. After seventy (70) days, we may cancel this Agreement:

- If you do not pay the Agreement Charge;
- If you are convicted of a crime that results in an increase in the risk covered under this Agreement;
- If there has been a material misrepresentation or fraud at the time of sale of this Agreement or when filing a claim under this Agreement; or
- If we discover an act or omission by you, or a violation by you of any terms or conditions of this Agreement, after the Date Issued, that substantially and materially increases the risk covered under this Agreement.

If we cancel this Agreement after seventy (70) days, a pro-rata refund will be made based upon the greater of the time or mileage used, less an administrative fee of $30. All refunds will be paid to you or to the lienholder if applicable.

If this Agreement is financed, and your vehicle is a total loss or is repossessed, you authorize your lienholder (shown in Section 7 of the Information Schedule) to cancel this Agreement and receive the refund.

Page 6

MAX-33 (04/04)

Certified Document Number: 47889029 - Page 5 of 15

CMAX 00034

CMS Tracking # 1919547        Reprint # Any

## North Carolina

GENERAL PROVISIONS – Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:
If you cancel this Agreement within ninety (90) days of Date Issued, the administrative fee is $30 or 10% of the Agreement Charge, whichever is less.
If this Agreement is canceled after ninety (90) days of the Date Issued, the administrative fee is $30 or 10% of the pro-rata refund, whichever is less.

## Oklahoma

The following wording is added:

This Agreement is not issued by the manufacturer or wholesale company marketing the product. This Agreement will not be honored by such manufacturer or wholesale company.

GENERAL PROVISIONS - Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is deleted in its entirety and replaced with the following:

### 9. How This Agreement May Be Canceled – Including Refunds and Charges

**Cancellation By You**

You may cancel this Agreement at any time. To cancel, you must mail this Agreement to us or provide written notice to us. If you cancel this Agreement, a pro-rata refund will be made based upon the greater of the time or mileage used, less an administrative fee of $30 or 10%, whichever is less. All refunds will be paid to you or to the lienholder if applicable.

**Cancellation By Us**

We may cancel this Agreement for any reason including the following:

- If there has been a material misrepresentation or fraud at the time of sale of this Agreement;
- If you have failed to maintain your vehicle as prescribed by the manufacturer;
- If the odometer has been tampered with or disabled and you have failed to repair the odometer; or
- If you do not pay the Agreement Charge.

If we cancel this Agreement, a pro-rata refund will be made based upon the greater of the time or mileage used. All refunds will be paid to you or to the lienholder if applicable.

If this Agreement is financed and your vehicle is a total loss or is repossessed, you authorize your lienholder (shown in Section 7 of the Information Schedule) to cancel this Agreement and receive the refund.

## South Carolina

GENERAL PROVISIONS – Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:

**How the Original Purchaser May Cancel This Agreement During the "Free-Look" Period**

If you cancel this Agreement within twenty (20) days of receipt of this Agreement and have not incurred a claim, this Agreement shall be void and you will receive a full refund of the Agreement Charge. A ten percent (10%) penalty per month shall be added to a refund that is not made within forty-five (45) days of return of this Agreement to us. The provisions of this paragraph only apply to the original purchaser of this Agreement. The refund will be paid to you or to the lienholder if applicable.

If we cancel this Agreement, we mail you written notice fifteen (15) days prior to cancellation.

If you have questions, concerns or complaints regarding your Agreement, you may address them to:

South Carolina Department of Insurance
P.O. Box 100105
Columbia, South Carolina 29201-3105
(803) 737-6180

## Texas

Unresolved complaints or questions concerning the regulation of service contracts, may be directed to the Texas Department of Licensing and Regulation at P.O. Box 12157, Austin TX, 78711, 1-800-803-9202.

GENERAL PROVISIONS - Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended to include:

**How the Original Purchaser May Cancel This Agreement During the "Free-Look" Period**

If you cancel this Agreement within twenty (20) days of receipt of this Agreement and have not incurred a claim, this Agreement shall be void and you will receive a full refund of the Agreement Charge. A ten percent (10%) penalty per month shall be added to a refund that is not made within forty-five (45) days of return of this Agreement to us. The provisions of this paragraph only apply to the original purchaser of this Agreement. The refund will be paid to you or to the lienholder if applicable.

If we cancel this Agreement, we will mail you written notice five (5) days prior to cancellation.



MAX-33 (04/04)

Certified Document Number: 4789029 - Page 6 of 15

CMAX 00035

**Utah**
Coverage afforded under this Agreement is not guaranteed by the Property and Casualty Guaranty Association.
GENERAL PROVISIONS – Section 7 "Arbitration" is deleted in its entirety and replaced with the following:

**7. Arbitration**
Any matter in dispute between you and us may be subject to arbitration as an alternative to court action pursuant to the rule of (The American Arbitration Association or other recognized arbitrator), a copy of which is available on request from us. Any decision reached by arbitration shall be binding upon both you and us. The arbitration award may include attorney's fees if allowed by state law and may be entered as a judgment in any court of proper jurisdiction.
General Provisions – Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is amended as follows:
We may cancel this Agreement at any time for any of the reasons listed below:

- For nonpayment of premium;
- For material misrepresentation;
- For substantial changes in the risk assumed, unless the insurer should reasonably have foreseen the change or contemplated the risk when entering into the contract; or
- For substantial breaches in contractual duties, conditions or warranties.

If we cancel this Agreement, we will mail you written notice ten (10) days prior to cancellation for non-payment of the Agreement Charge and thirty (30) days prior to cancellation for any other acceptable reason.
If this Agreement is financed and your vehicle is a total loss or is repossessed, you authorize your lienholder (shown in Section 7 of the Information Schedule) to receive the refund.

**Wisconsin**
All references to Consumer Program Administrators, Inc. are deleted and replaced by the following:

     Automotive Warranty Services of Florida, Inc.
     5050 North Broadway
     Chicago, Illinois 60640

THIS AGREEMENT IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE COMMISSIONER OF INSURANCE.
"WHAT THIS AGREEMENT DOES NOT COVER" is amended to include:
The exclusion "When repairs are performed without prior authorization." is deleted in its entirety.
GENERAL PROVISIONS - Section 6 "Subrogation" is deleted in its entirety and replaced with the following:

**6. Subrogation**
You agree that we, after honoring a claim on your Agreement, have all rights of subrogation against those who may be responsible for your breakdown. You shall do whatever is necessary to secure such rights. You shall do nothing to prejudice such rights, and you shall execute and deliver to us instruments and papers required to either secure or maintain such rights. After you are made whole any amounts recovered by you for which you were previously reimbursed under this contract shall become our property or the property of our designee and shall be forwarded to same by you up to the total amount paid by us under this contract. Any amounts recovered by us will be paid to you until you are fully paid for your loss. We will keep any excess of these amounts for our payments to you.
GENERAL PROVISIONS - Section 9 "How This Agreement May Be Canceled – Including Refunds And Charges" is revised as follows:
The ninety (90) day cancellation time period is replaced with sixty (60) days.

**Alabama, Arkansas, California, Colorado, Connecticut, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Missouri, New York, North Carolina, Texas, Utah, Wisconsin**
General Provisions – Section 10 "Insurance" is deleted in its entirety and replaced with the following:

**10. Insurance**
The obligations of the Provider under this Agreement are insured under an Insurance Policy issued by Virginia Surety Company, Inc., 1000 Milwaukee Avenue, Glenview, Illinois 60025. In the event the Provider ceases to operate, is bankrupt or your claim is not paid within 60 days after proof of loss has been filed, you may file a direct claim with Virginia Surety Company, Inc. To do so, please call the following toll-free number for instructions: 1-800-209-6206.

IF YOU HAVE A BREAKDOWN CALL YOUR DEALER OR
-Call Consumer Program Administrators, Inc. toll-free: 1-800-731-2834

Administered By:
Consumer Program Administrators, Inc.
P.O. Box 87612
Chicago, Illinois 60680-0612

MAX-33 (04/04)

Page 8

CMAX 00036

Certified Document Number: 47889029 - Page 7 of 15



DMS Tracking # 1919558   Reprint #: 0

05/25/2009 09:29 pm  1 of 1

## ADDENDUM TO TEXAS VEHICLE PURCHASE AGREEMENT

THIS ADDENDUM is provided to the Seller to further define the Seller's warranty described in the DISCLOSURE OF VEHICLE HISTORY AND CONDITION section on the reverse side of the Vehicle Purchase Agreement.  This paragraph provides in pertinent part as follows:

"Except as disclosed by you in the blanks below: You represent and warrant that the Vehicle is not rebuilt or reconstructed, has not been involved in an accident, and has not suffered body-damage, frame-damage or flood-damage."

As a further definition of Seller's warranty agreed to above, Seller expressly agrees and acknowledges that "flood damage" refers to any and all damage to the Vehicle involving water including, but not limited to, any flood damage that occurred in Texas.

"Flood damage" includes any damage caused by the contact of water on a vehicle and in any way causing damage thereto so as to impact its value or performance including, without limitation, electrical damage as well as interior damage to the seats, carpet, door panel, and so on. In acknowledgement of this definition, the Seller provides the signature(s) below.

| 2002 | LEXUS | RX 300 | JTJGF10U420130014 |
|---|---|---|---|
| Year | Make | Model | Vehicle Identification Number |

_____
Seller's Signature

HOA TU LY
Seller's Printed Name

5/25/09
Date

_____
Seller's Signature

_____
Seller's Printed Name

_____
Date

Certified Document Number: 47889029 - Page 8 of 15

PFF1300
Order #
Revision Date 12/03

**carmax.com**

MIS ID
Legal - JK

CMAX 00046

 **CARMAX**®

 DMS Tracking # 1519558   Report # 0

05/25/2009 09:29 pm  1 of 1

## ADDENDUM TO TEXAS VEHICLE PURCHASE AGREEMENT

THIS ADDENDUM is provided to the Seller to further define the Seller's warranty described in the DISCLOSURE OF VEHICLE HISTORY AND CONDITION section on the reverse side of the Vehicle Purchase Agreement.   This paragraph provides in pertinent part as follows:

"Except as disclosed by you in the blanks below: You represent and warrant that the Vehicle is not rebuilt or reconstructed, has not been involved in an accident, and has not suffered body-damage, frame-damage or flood-damage."

As a further definition of Seller's warranty agreed to above, Seller expressly agrees and acknowledges that "flood damage" refers to any and all damage to the Vehicle involving water including, but not limited to, any flood damage that occurred in Texas.

"Flood damage" includes any damage caused by the contact of water on a vehicle and in any way causing damage thereto so as to impact its value or performance including, without limitation, electrical damage as well as interior damage to the seats, carpet, door panel, and so on.  In acknowledgement of this definition, the Seller provides the signature(s) below.

| 2002 | LEXUS | RX 300 | JTJGF10U420130014 |
|------|-------|--------|-------------------|
| Year | Make | Model | Vehicle Identification Number |

Seller's Signature                                    Seller's Signature

HOA TU LY                                            Seller's Printed Name
Seller's Printed Name

5/25/09                                              Date
Date

PFF1300
Order # _____
Revision Date 12/03

**carmax.com**

MIS ID
Legal - JK



Below is a list of some major defects that may occur in used motor vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage excluding normal seepage
Cracked of damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage

---

## CarMax Auto Superstores, Inc.

DEALER

## 6909 SOUTHWEST FREEWAY

ADDRESS

## HOUSTON,TX,77074

## (713)774-3400

SEE FOR COMPLAINTS

I hereby acknowledge receipt of the Buyers Guide at the closing of this sale.

_____          5/85/09
(Buyer Signature)                         (Date)

IMPORTANT: The information on this form is part of any contract to buy this vehicle. Removal of this label before consumer purchase (except for purpose of test-driving) is a violation of federal law (16 C.F.R. 455).

Certified Document Number: 47889029 - Page 10 of 15

DEFENDANT'S
EXHIBIT
B-8



## Your AutoCheck Vehicle History Report

**This vehicle qualifies for Buyback Protection!**

The vehicle identification number you submitted has been analyzed and summary information on your car is shown below

Report Run Date: 2009-05-25 20:18:11.695 EDT

| | |
|---|---|
| Vehicle Description: | 2T2HA31U05C054670 |
| Title Check: | No record Reported to AutoCheck |
| Problem Check: | No record Reported to AutoCheck |
| Odometer Check: | Record(s) Reported to AutoCheck |
| Vehicle Information: | Record(s) Reported to AutoCheck |
| Full History: | Record(s) Reported to AutoCheck |

Vehicle Description | TitleCheck | ProblemCheck | OdometerCheck | Vehicle Information | Full History

### Vehicle Description

Back to top

| | |
|---|---|
| VIN: | 2T2HA31U05C054670 |
| Year: | 2005 |
| Make: | Lexus |
| Model: | RX330 |
| Style/Body: | SUV / Utility 4D |
| Engine: | 3.3L V6 MPI |
| Country of Assembly: | Canada |
| Last Reported Odometer Reading: | 44,649 |

 No problem    Problem found    Information found

Vehicle Description | TitleCheck | ProblemCheck | OdometerCheck | Vehicle Information | Full History

### TitleCheck

Back to top

 **Your Vehicle Checks Out!** AutoCheck's database for this 2005 Lexus RX330 (2T2HA31U05C054670) show no significant Title events. When found, events often indicate past automotive damage or warnings associated with the vehicle title.

| Problems Checked | Results Found |
|---|---|
| Abandoned |  No Abandoned Record Reported to AutoCheck |

Certified Document Number: 47889029 - Page 11 of 15


DEFENDANT'S EXHIBIT B-9



| | |
|---|---|
| Damaged | No Damaged Record Reported to AutoCheck |
| Fire Damage | No Fire Damage Record Reported to AutoCheck |
| Grey Market | No Grey Market Record Reported to AutoCheck |
| Hail Damage | No Hail Damage Record Reported to AutoCheck |
| Insurance Loss | No Insurance Loss Record Reported to AutoCheck |
| Junk | No Junk Record Reported to AutoCheck |
| Rebuilt/Rebuildable | No Rebuilt/Rebuildable Record Reported to AutoCheck |
| Salvage | No Salvage Record Reported to AutoCheck |

Vehicle Description | TitleCheck | ProblemCheck | OdometerCheck | Vehicle Information | Full History

## ProblemCheck                                    Back to top

**Your Vehicle Checks Out!** AutoCheck's database for this 2005 Lexus RX330 (2T2HA31U05C054670) shows no historical events that indicate a significant automotive problem. These problems can indicate previous car damage, theft, or other significant problem.

| Problems Checked | Results Found |
|---|---|
| NHTSA Crash Test Vehicle | No NHTSA Crash Test Vehicle Record Reported to AutoCheck |
| Frame Damage | No Frame Damage Record Reported to AutoCheck |
| Major Damage Incident | No Major Damage Incident Record Reported to AutoCheck |
| Manufacturer Buyback/Lemon | No Manufacturer Buyback/Lemon Record Reported to AutoCheck |
| Odometer Problem | No Odometer Problem Record Reported to AutoCheck |
| Recycled | No Recycled Record Reported to AutoCheck |
| Salvage Auction | No Salvage Auction Record Reported to AutoCheck |
| Water Damage | No Water Damage Record Reported to AutoCheck |

Vehicle Description | TitleCheck | ProblemCheck | OdometerCheck | Vehicle Information | Full History

## OdometerCheck                                    Back to top



**Your Vehicle Checks Out!** For this 2005 Lexus RX330 (2T2HA31U05C054670) no indication of an odometer rollback or tampering was found. We calculate odometer rollbacks by using AutoCheck business rules to determine reported odometer readings are less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage. AutoCheck's business rules have been created and refined to help identify potential rollbacks from the reported odometer readings. Not all odometer readings are used to determine

Certified Document Number: 47889029 - Page 12 of 15

**CMAX 00051**

rollbacks.

Report Run Date: 2009-05-25 20:18:11.695 EDT

| Date Reported | Odometer Reading |
|---------------|------------------|
| 02/23/2005 | 12 |
| 03/14/2009 | 44,649 |
| 03/16/2009 | 44,649 |

Vehicle Description | TitleCheck | ProblemCheck | OdometerCheck | Vehicle Information | Full History



## Vehicle Information                                    Back to top

**I** Information Found! AutoCheck found additional information on this vehicle. These records will provide you with more past history for this 2005 Lexus RX330 (2T2HA31U05C054670)

| Problems Checked | Results Found |
|------------------|---------------|
| **Accident Data** | Accident Record Reported Through State Agencies or Independent Sources |
| **Corrected Title** | No Corrected Title Record Reported to AutoCheck |
| **Driver Education** | No Driver Education Record Reported to AutoCheck |
| **Duplicate Title** | No Duplicate Title Record Reported to AutoCheck |
| **Emission/Safety Inspection** | No Emission/Safety Inspection Record Reported to AutoCheck |
| **Fire Damage Incident** | No Fire Damage Incident Record Reported to AutoCheck |
| **Fleet, Rental and/or Lease Use** | Fleet, Rental and/or Lease Use Record(s) Reported to AutoCheck |
| **Taxi Use** | No Taxi Use Record Reported to AutoCheck |
| **Loan/Lien** | No Loan/Lien Record Reported to AutoCheck |
| **Livery Use** | No Livery Use Record Reported to AutoCheck |
| **Government Use** | No Government Use Record Reported to AutoCheck |
| **Police Use** | No Police Use Record Reported to AutoCheck |
| **Repossessed** | No Repossessed Record Reported to AutoCheck |
| **Storm Area Registration/Title** | No Storm Area Registration/Title Record Reported to AutoCheck |
| **Theft** | No Theft Record Reported to AutoCheck |

Vehicle Description | TitleCheck | ProblemCheck | OdometerCheck | Vehicle Information | Full History



## Full History                                          Back to top

Below are the historical events for this vehicle listed in chronological order. Any discrepancies will be

CMAX 00052

in bold text.

Report Run Date: 2009-05-25 20:18:11.695 EDT
Vehicle: 2005 Lexus RX330 (2T2HA31U05C054670)

| Event Date | Event Location | Odometer Reading | Data Source | Event Detail |
|---|---|---|---|---|
| 12/13/2004 | IL | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 02/16/2005 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 02/23/2005 | HIGHLAND PARK, IL | 12 | Motor Vehicle Dept. | TITLE (Title #:X5054028009) |
| 03/02/2006 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 06/20/2007 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 11/12/2008 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 12/06/2008 | HIGHLAND PARK, IL | | Police Report | ACCIDENT REPORTED(Case #:8502858) |
| 03/14/2009 | TN | 44,649 | Auto Auction | REPORTED AT AUTO AUCTION |
| 03/16/2009 | TN | 44,649 | Auto Auction | AUCTION ANNOUNCED AS FLEET/LEASE |

**AutoCheck Terms and Conditions**
This report, and any reliance upon it, is subject to AutoCheck Terms and Conditions. If you obtained the report from a dealer, the dealer has been provided with these Terms & Conditions and can share them with you. These AutoCheck Terms and Conditions are also available at any time at www.autocheck.com/terms or by writing to Experian: Experian Automotive C/O AutoCheck Customer Service 955 American Lane Schaumburg IL 60173

**Buyback Protection Terms and Conditions**
This vehicle (2T2HA31U05C054670) qualifies for AutoCheck Buyback Protection. If you obtained the report from a dealer, the dealer has been provided with the terms and can share them with you. These Buyback Protection Terms and Conditions are also available to you at any time at www.autocheck.com/bbpterms or by writing to Experian: Experian Automotive C/O AutoCheck Customer Service 955 American Lane Schaumburg IL 60173

**About AutoCheck**
AutoCheck vehicle history reports by Experian Automotive is the leading vehicle history reporting service. With expert data handling, the Experian Automotive database houses over 4 billion records on a half a billion vehicles. Every AutoCheck vehicle history report will give you confidence when buying or selling your next used vehicle, with superior customer service every step of the way.

CMAX 00053

CARMAX      <u>Vehicle History Disclosure</u>

DMS Tracking #: 1918592     Repiint # 0

Buyer:  HOA TU LY

Co-Buyer:

Year  2005     Make·  LEXUS     Model  RX 330     VIN  2T2HA31U05C054870

Stock No:  5763204

I / We acknowledge the above vehicle's prior use, as known at the time of delivery, as:

FLEET - This vehicle was previously part of a fleet of vehicles used by a business.

I / We also acknowledge that additional information may be contained in the AutoCheck® vehicle history report for the above vehicle, which I / we have received and understand.

Buyer's Signature:                             Date:  05/25/2009

Co-Buyer's Signature:                          Date:  05/25/2009

PFF829
Order #  1165569
Revision Date 9/08

**carmax.com**

MIS ID 1027008
Legal - MA



Certified Document Number: 47889029 - Page 15 of 15



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:        47889029 Total Pages:  15

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



Vehicle Repair Order History

**DEFENDANT'S EXHIBIT**
**B-11**

VIN: 2T2HA31U05C054670
Vehicle: 2005 LEXUS RX 330 (no trim) 4D SPORT UTILITY 3.3L BLACK

## Repair Order

| 7284 | RO #: | 123609 | Customer: CARMAX - 7284 | RO Open Date: 03/00/00 |
|---|---|---|---|---|
| RO Status: CANCELLED | | | Cust Phone:( )   - | RO Complete: 03/19/09 |
| Stock Number: 5763204 | | | SC/Team: | Odometer In/Out: |

Concern:  1    Description: USED VEHICLE CQI INSPECTION
Cause: CQI REQUIRED
Correction: CQI COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | L | CAN | CQI INSPECTION & 1ST TEST DRIVE | | 0.00 | | | $0.00 |
| INT | L | CAN | OIL CHANGE | | 0.00 | | | $0.00 |
| INT | L | CAN | 2ND TEST DRIVE | | 0.00 | | | $0.00 |
| INT | L | CAN | FQC INSPECTION | | 0.00 | | | $0.00 |
| INT | L | CAN | FQC INSPECTION | | 0.00 | | | $0.00 |

## Repair Order

| 7174 | RO #: | 139747 | Customer: CARMAX - 7174 | RO Open Date: 03/27/09 |
|---|---|---|---|---|
| RO Status: TENDERED | | | Cust Phone:( )   - | RO Complete: 04/16/09 |
| Stock Number: 5763204 | | | SC/Team: DAY PRODUCTION | Odometer In/Out: 44649 / 44649 |

Concern:  1    Description: USED VEHICLE CQI INSPECTION (Has 2nd key)
Cause: CQI REQUIRED
Correction: CQI COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | S | TEN | SUBLET - KEYS AND REMOTES - OPERATION | | 0.00 | | | $225.00 |
| INT | S | TEN | SUBLET - ENTERTAINMENT SYSTEM-RADIO N | | 0.00 | | | $1,520.00 |
| INT | S | TEN | SUBLET - INTERIOR-LEATHER REPAIR - OPER/ | | 0.00 | | | $95.68 |
| INT | L | TEN | CQI INSPECTION & 1ST TEST DRIVE | RANDOLPH SIMMS | 1.60 | | | $44.21 |
| INT | L | TEN | OIL CHANGE | RANDOLPH SIMMS | 0.40 | | | $9.82 |
| INT | P | TEN | BULK OIL | | | 5 | $1.60 | $8.00 |
| INT | P | TEN | OIL FILTER | | | 1 | $1.56 | $1.56 |
| INT | P | TEN | AIR FILTER | | | 1 | $7.80 | $7.80 |
| INT | L | TEN | 2ND TEST DRIVE | RANDOLPH SIMMS | 0.20 | | | $4.91 |
| INT | L | TEN | FQC INSPECTION | ED ROBERSON | 0.00 | | | $0.00 |
| INT | L | TEN | - RESURFACE PADS - OPERATION -  RESURF/ | RANDOLPH SIMMS | 0.80 | | | $19.65 |
| INT | L | TEN | - MACHINE ROTOR (2) - OPERATION - MACHIN | RANDOLPH SIMMS | 1.00 | | | $24.56 |
| INT | L | TEN | - BRAKE PAD REPLACEMENT - REAR - OPERA | RANDOLPH SIMMS | 1.30 | | | $31.93 |
| INT | P | TEN | PADS/SHOES | | | 1 | $18.96 | $18.96 |
| INT | L | TEN | - SPARE TIRE INSTALLATION - OPERATION | RANDOLPH SIMMS | 0.20 | | | $4.91 |
| INT | L | TEN | - WIRING/CONNECTOR REPAIR - OPERATION | RANDOLPH SIMMS | 0.20 | | | $4.91 |
| INT | L | TEN | R&R - HORN ASSEMBLY - OPERATION - BOTH | RANDOLPH SIMMS | 0.40 | | | $9.82 |
| INT | L | TEN | - REPLACE OR INSTALL HUBCAP(S) (PER VEH | ROB PIERSON | 0.20 | | | $4.91 |
| INT | P | TEN | CENTER CAP | | | 2 | $13.64 | $27.28 |
| INT | L | TEN | - CONSOLE LID-FREE CENTER CONSOLE TOP | RANDOLPH SIMMS | 0.80 | | | $19.65 |
| INT | L | TEN | - WIPER BLADES REPLACE 3 -  R&R WIPER BL | RANDOLPH SIMMS | 0.30 | | | $7.37 |
| INT | P | TEN | WIPER BLADES | | | 1 | $14.71 | $14.71 |
| INT | P | TEN | WIPER BLADES | | | 1 | $2.75 | $2.75 |
| INT | P | TEN | WIPER BLADES | | | 1 | $1.41 | $1.41 |
| INT | L | TEN | - WHEEL STUD-CHASE TAG BOLT HOLES | RANDOLPH SIMMS | 0.50 | | | $12.28 |
| INT | L | TEN | - CONTROLS \ FEATURES - GENERIC- PERFOI | RANDOLPH SIMMS | 0.50 | | | $12.28 |
| INT | L | TEN | - MOUNT AND BALANCE 4 TIRES - OPERATION | RANDOLPH SIMMS | 0.90 | | | $22.10 |
| INT | P | TEN | (SHORT SHANK) CHROME LUG NUTS | | | 4 | $4.14 | $16.56 |
| INT | P | TEN | 225/65R17 101S | | | 4 | $90.56 | $362.24 |
| INT | L | TEN | - VALVETRAIN INSPECTION (TOYATA / LEXUS) | RANDOLPH SIMMS | 1.00 | | | $24.56 |

**CMAX 00055**

Certified Document Number: 47889026 - Page 1 of 19

i  of  6

9/15/2010 11:58:13



## Vehicle Repair Order History

VIN: 2T2HA31U05C054670
Vehicle: 2005 LEXUS RX 330 (no trim) 4D SPORT UTILITY 3.3L BLACK

### Repair Order

| 7174   RO #:   139747 | Customer: CARMAX - 7174 | RO Open Date: 03/27/09 |
|---|---|---|
| RO Status: TENDERED | Cust Phone: ( )  - | RO Complete:04/16/09 |
| Stock Number: 5763204 | SC/Team:DAY PRODUCTION | Odometer In/Out: 44649 / 44649 |

Concern: 1    Description: USED VEHICLE CQI INSPECTION (Has 2nd key)
Cause: CQI REQUIRED
Correction: CQI COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | L | TEN | - MOUNT AND BALANCE 1 TIRE - OPERATION | RANDOLPH SIMMS | 0.30 | | | $7.37 |
| INT | L | CAN | - ENGINE - GENERIC-NO START | ROB PIERSON | 0.00 | | | $0.00 |
| INT | L | TEN | - CLEAN BATTERY TERMINALS - OPERATION | ROB PIERSON | 0.20 | | | $4.91 |
| INT | L | TEN | - BATTERY REPLACE - OPERATION - R&R BAT | ROB PIERSON | 0.20 | | | $4.91 |
| INT | P | TEN | BATTERY | | | 1 | $70.60 | $70.60 |
| INT | L | TEN | - REPLACE OR INSTALL HUBCAP(S) (PER VEH | J REEVES | 0.20 | | | $4.91 |
| INT | P | TEN | CENTER CAP | | | 1 | $13.64 | $13.64 |

Concern: 2    Description: CIW
Cause: CIW REQUIRED
Correction: CIW COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | S | CAN | Passenger Bedside/Vanside-REMOVE DENTS > 2 | | 0.00 | | | $0.00 |
| INT | S | TEN | Passenger Bedside/Vanside-REPAIR AND PAINT | | 0.30 | | | $33.75 |
| INT | S | TEN | Passenger Front Door-REMOVE DENTS < 2 PER | | 0.40 | | | $0.00 |
| INT | S | TEN | Passenger Fender-REPAIR AND PAINT 1 STEEL | | 0.30 | | | $33.75 |
| INT | S | TEN | SUBLET - PAINT / BODYSHOP - OPERATION | | 0.00 | | | $1,006.80 |
| INT | S | TEN | Driver Front Door-REMOVE DENTS < 2 PER PAN | | 0.40 | | | $57.96 |
| INT | S | CAN | Interior Panels-PROGRAM KEY | | 0.00 | | | $0.00 |
| INT | L | CAN | Passenger Bedside/Vanside-REPAIR TYPE B 1 | | 0.00 | | | $0.00 |
| INT | L | CAN | Passenger Bedside/Vanside-PAINT BEDSIDE/VAI | | 0.00 | | | $0.00 |
| INT | L | CAN | Passenger Bedside/Vanside-PREP PAINT BEDSII | | 0.00 | | | $0.00 |
| INT | L | CAN | Passenger Front Door-REPAIR TYPE A 1 | | 0.00 | | | $0.00 |
| INT | L | CAN | Passenger Front Door-PAINT DOOR | | 0.00 | | | $0.00 |
| INT | L | CAN | Passenger Front Door-PREP PAINT DOOR | | 0.00 | | | $0.00 |
| INT | L | TEN | Exterior-DETAIL -C (3.2 HR) | DAVID BRISCOE | 3.20 | | | $46.43 |
| INT | L | TEN | Exterior-TOUCH UP REPAIR | DAVID BRISCOE | 0.20 | | | $2.90 |

### Repair Order

| 7174   RO #:   140399 | Customer: CARMAX - 7174 | RO Open Date: 04/16/09 |
|---|---|---|
| RO Status: TENDERED | Cust Phone: ( )  - | RO Complete:04/20/09 |
| Stock Number: 5763204 | SC/Team:DAY PRODUCTION | Odometer In/Out: 44649 / 44649 |

Concern: 1    Description: TO DO
Cause: TO DO REQUESTED
Correction: TO DO COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | L | TEN | FQC INSPECTION | CHUCK COLBERT | 0.00 | | | $0.00 |
| INT | L | CAN | - BODY / TRIM COMPONENT - GENERIC-NEED | J REEVES | 0.00 | | | $0.00 |
| INT | L | TEN | - BODY / TRIM COMPONENT - GENERIC-THE P | J REEVES | 0.00 | | | $0.00 |
| INT | L | TEN | - CONTROLS \ FEATURES - GENERIC-REPROC | J REEVES | 0.30 | | | $7.37 |
| INT | L | TEN | - LIC PLATE BRACKET - OPERATION | TRAVIS BEAMER | 0.20 | | | $4.91 |
| INT | P | TEN | FRONT LIC PLATE BRACKET | | | 1 | $41.99 | $41.99 |

CMAX 00056

9/15/2010 11:58:13

 **Vehicle Repair Order History**

VIN: 2T2HA31U05C054670
Vehicle: 2005 LEXUS RX 330 (no trim) 4D SPORT UTILITY 3.3L BLACK

## Repair Order

| 7150   RO #:   528092 | Customer: CARMAX - 7150 | RO Open Date: 03/19/09 |
|---|---|---|
| RO Status: TENDERED | Cust Phone: ( )  - | RO Complete: 03/24/09 |
| Stock Number: 5763204 | SC/Team: DETAIL | Odometer In/Out: 44649 / 44659 |

Concern:   1    Description: USED VEHICLE CQI INSPECTION
Cause: CQI REQUIRED
Correction: CQI COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | S | CAN | SUBLET - MECHANICAL-RADIO VALUE AND TUI | | 0.00 | | | $0.00 |
| INT | L | TEN | CQI INSPECTION & 1ST TEST DRIVE | FRIDAY ESON | 1.80 | | | $42.48 |
| INT | L | CAN | OIL CHANGE | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | OIL FILTER | | | 0 | $0.00 | $0.00 |
| INT | P | CAN | BULK OIL | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | 2ND TEST DRIVE | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | LUG NUTS-CHROME  SHORT. | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | TN EMISSIONS | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | L | CAN | FQC INSPECTION | | 0.00 | | | $0.00 |
| INT | L | CAN | - BODY / TRIM COMPONENT - GENERIC-REPAI | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | L | CAN | - SHIFTER KNOB | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | SHIFTER KNOB | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | - AIR FILTER REPLACE - CQI - OPERATION | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | AIR FILTER (A2933C) | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | - REMOVE WHEEL LOCKS - OPERATION | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | L | CAN | - MACHINE ROTORS - REPLACE PADS | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | RR PADS | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | - MACHINE ROTORS- RESURFACE PADS - OPI | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | L | CAN | - TPMS RESET - 2/4 TIRE REPLACEMENT - OPI | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | L | CAN | - MOUNT AND BALANCE 4 TIRES - OPERATION | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | NAME BRAND TIRE-225/65R17  101S | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | - LIC PLATE BRACKET - OPERATION | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | LISC TAG BRACKET-FRONT BRACKET | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | - REPLACE OR INSTALL HUBCAP(S) (PER VEH | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | WHEEL CENTER CAP | | | 0 | $0.00 | $0.00 |
| INT | L | CAN | R&R - RADIO - R&I RADIO - OPERATION | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | L | CAN | R&R - RADIO - R&I RADIO - OPERATION | FRIDAY ESON | 0.00 | | | $0.00 |
| INT | P | CAN | RADIO REPAIR, VOLUME BUTTON AND TUNE E | | | 0 | $0.00 | $0.00 |
| INT | L | TEN | KICK TO WHOLESALE | MIKE SLOAN | 0.00 | | | $0.00 |

Concern:   2    Description: CIW
Cause: CIW REQUIRED
Correction: CIW COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| INT | S | TEN | Passenger Bedside/Vanside-REMOVE DENTS < 2 | | 0.40 | | | $197.80 |
| INT | S | TEN | Interior Panels-PROGRAM KEY | | 0.50 | | | $500.00 |
| INT | S | CAN | SUBLET - PAINT / BODYSHOP - OPERATION | | 0.00 | | | $0.00 |
| INT | S | TEN | Passenger Rear Door-REMOVE DENTS < 2 PER I | | 0.40 | | | $0.00 |
| INT | L | CAN | Exterior-DETAIL -C (3.5 HR) | CALEB JEFFREYS | 0.00 | | | $0.00 |
| INT | L | TEN | - WASH,VAC,GLASS,TIRES - OPERATION | CALEB JEFFREYS | 1.00 | | | $14.90 |

Certified Document Number: 47889026 - Page 3 of 19

**CMAX 00057**



**Vehicle Repair Order History**

VIN: 2T2HA31U05C054670
Vehicle: 2005 LEXUS RX 330 (no trim) 4D SPORT UTILITY 3.3L BLACK

## Repair Order

| | | | | | |
|---|---|---|---|---|---|
| 7111 | RO #: | 883989 | Customer: CARMAX - 7111 | RO Open Date: 05/22/09 | |
| | RO Status: TENDERED | | Cust Phone:( )  - | RO Complete: 05/22/09 | |
| Stock Number: 5763204 | | | SC/Team: DAY PRODUCTION 1 | Odometer In/Out: 44917 / 44917 | |

Concern: 1   Description: POST RECON TRANSFER
Cause: VEHICLE TRANSFER REQUESTED
Correction: VEHICLE TRANSFER COMPLETED

| Rate | Type | Line | Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|---|
| INT | L | | TEN | FQC INSPECTION | CHARLES CHRISTEN | 0.00 | | | $0.00 |
| INT | L | | TEN | - TX STATE INSPECTION - OPERATION | MOE MAHVASH | 0.80 | | | $19.65 |
| INT | L | | TEN | - GREEN SHEET INSPECTION - OPERATION | MOE MAHVASH | 0.10 | | | $2.46 |

## Repair Order

| | | | | | |
|---|---|---|---|---|---|
| 7111 | RO #: | 888390 | Customer: LY, HOA | RO Open Date: 07/02/09 | |
| | RO Status: TENDERED | | Cust Phone: (713) 899-3313 | RO Complete: 07/02/09 | |
| Stock Number: 5763204 | | | SC/Team: WARD, JAMIE | Odometer In/Out: 46751 / 46752 | |

Concern: 1   Description: TOW IN NO START
Cause: no start car has 1/4 tank of fuel. check for codes no codes, good spark, good inejc
Correction: replace fuel pump, replace fouled spark plugs, and fuel injection service. drain tan

| Rate | Type | Line | Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|---|
| RET | L | | CAN | ENGINE / NO START | MARK FARROW | 0.00 | | | $0.00 |
| RET | L | | CAN | R&R - SPARK PLUGS - OPERATION | MARK FARROW | 0.00 | | | $0.00 |
| RET | P | | CAN | PLATINUM SPARK PLUG | | | 0 | $0.00 | $0.00 |
| RET | L | | TEN | DIAGNOSIS - FUEL INJECTION SYSTEM - INCL | MARK FARROW | 1.40 | | | $86.00 |
| RET | L | | CAN | CLEAN - FUEL TANK - COMBINATION | MARK FARROW | 0.00 | | | $0.00 |
| RET | L | | CAN | R&R - FUEL PUMP - OPERATION | MARK FARROW | 0.00 | | | $0.00 |
| TWG | P | | CAN | FUEL | | | 0 | $0.00 | $0.00 |
| RET | P | | CAN | FUEL PUMP - USA BUILT | | | 0 | $0.00 | $0.00 |

Concern: 2   Description: CUSTOMER CARE INSPECTION PACKAGE
Cause: CUSTOMER CARE INSPECTION REQUESTED
Correction: CUSTOMER CARE INSPECTION COMPLETED

| Rate | Type | Line | Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|---|
| RET | L | | TEN | CUSTOMER CARE INSPECTION | MARK FARROW | 0.00 | | | $0.00 |

Concern: 3   Description: FUEL INJECTOR SERVICE PACKAGE
Cause: FUEL INJECTOR SERVICE REQUESTED
Correction: FUEL INJECTOR SERVICE COMPLETED

| Rate | Type | Line | Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|---|
| RET | L | | CAN | FUEL INJECTOR SERVICE | MARK FARROW | 0.00 | | | $0.00 |
| RET | P | | CAN | INJECTOR CLEANER | | | 0 | $0.00 | $0.00 |

Concern: 4   Description: noise when going over bumps
Cause: suspension check heard noise over bumps installed chasis ears and bouncec car
Correction: replace right front lower control arm and align

| Rate | Type | Line | Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|---|
| RET | L | | CAN | RIDE / HANDLING | MARK FARROW | 0.00 | | | $0.00 |
| TWG | L | | CAN | - ALIGNMENT PACKAGE - OPERATION | MARK FARROW | 0.00 | | | $0.00 |
| TWG | L | | CAN | R&R - CONTROL ARM - AWD - OPERATION - AV | MARK FARROW | 0.00 | | | $0.00 |

CMAX 00058

4 of 6

9/15/2010 11:58:13

 **Vehicle Repair Order History**

VIN: 2T2HA31U05C054670
Vehicle: 2005 LEXUS RX 330 (no trim) 4D SPORT UTILITY 3.3L BLACK

**Repair Order**

| | | | | |
|---|---|---|---|---|
| 7111   RO #:   888390 | Customer: LY, HOA | RO Open Date: 07/02/09 |
| RO Status: TENDERED | Cust Phone: (713) 899-3313 | RO Complete: 07/02/09 |
| Stock Number: 5763204 | SC/Team: WARD, JAMIE | Odometer In/Out: 46751 / 46752 |

Concern: 4   Description: noise when going over bumps
Cause: suspension check heard noise over bumps installed chasis ears and boucned car
Correction: replace right front lower control arm and align

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| TWG | P | CAN | CONTROL ARM-RIGHT FRONT - AWD - LOWER. | | | 0 | $0.00 | $0.00 |
| TWG | L | CAN | DIAGNOSE - RIDE / HANDLING - OPERATION | MARK FARROW | 0.00 | | | $0.00 |

**Repair Order**

| | | | | |
|---|---|---|---|---|
| 7111   RO #:   895725 | Customer: LY, HOA | RO Open Date: 09/18/09 |
| RO Status: TENDERED | Cust Phone: (832) 758-3845 | RO Complete: 09/21/09 |
| Stock Number: 5763204 | SC/Team: VAUGHN, CODY | Odometer In/Out: 49529 / 49530 |

Concern: 1   Description: SHAKING ON ACCELERATION AND IDLE.
Cause: BAD FUEL
Correction: BAD FUEL.

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| RET | L | TEN | RIDE/HANDLING | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | L | TEN | DIAGNOSE - ENGINE / NO START - OPERATION | LONG NGUYEN | 1.00 | | | $86.00 |
| RET | L | CAN | CLEAN - FUEL TANK - COMBINATION | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | L | CAN | R&R - FUEL TANK - AWD - OPERATION | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | P | CAN | FUEL PUMP | | | 0 | $0.00 | $0.00 |
| RET | L | CAN | - ENGINE - GENERIC-CLEAN OUT ALL FUEL LII | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | L | CAN | - THROTTLE BODY SERVICE - OPERATION | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | P | CAN | THROTTLE BODY GASKET | | | 0 | $0.00 | $0.00 |

Concern: 2   Description: CHECK ENGINE LIGHT / ENGINE PERFORMANCE
Cause: BAD FUELOk
Correction: BAD FUEL

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| RET | L | TEN | CHECK ENGINE LIGHT | LONG NGUYEN | 0.00 | | | $0.00 |

Concern: 3   Description: PANIC ALARM ON KEY NOT WORKING.
Cause: Technician Documentation Required
Correction: Technician Documentation Required

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| RET | L | TEN | TRIM / BODY | LONG NGUYEN | 0.00 | | | $0.00 |

Concern: 4   Description: FUEL INJECTOR SERVICE PACKAGE
Cause: FUEL INJECTOR SERVICE REQUESTED
Correction: FUEL INJECTOR SERVICE COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| RET | L | CAN | FUEL INJECTOR SERVICE | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | P | CAN | INJECTOR CLEANER | | | 0 | $0.00 | $0.00 |

Certified Document Number: 47889026 - Page 5 of 19

CMAX 00059

9/15/2010 11:58:13

 **Vehicle Repair Order History**

VIN: 2T2HA31U05C054670
Vehicle: 2005 LEXUS RX 330 (no trim) 4D SPORT UTILITY 3.3L BLACK

**Repair Order**

| | | |
|---|---|---|
| 7111  RO #:  895725 | Customer: LY, HOA | RO Open Date:09/18/09 |
| RO Status: TENDERED | Cust Phone:(832) 758-3845 | RO Complete:09/21/09 |
| Stock Number: 5763204 | SC/Team:VAUGHN, CODY | Odometer In/Out: 49529 / 49530 |

Concern: 5    Description: TUNE-UP SERVICE PAKCAGE (6 CYL)
Cause: TUNE-UP SERVICE (6 CYL) REQUESTED
Correction: TUNE-UP SERVICE (6 CYL) COMPLETED

| Rate | Type | Line Status | Operation | Technician | Hrs | Qty | Item | Charge |
|---|---|---|---|---|---|---|---|---|
| RET | L | CAN | TUNE-UP SERVICE (6 CYL) | LONG NGUYEN | 0.00 | | | $0.00 |
| RET | P | CAN | SPARK PLUG | | | 0 | $0.00 | $0.00 |

CMAX 00060

9/15/2010 11:58:13

# CarMax ®      Notes for RO# 139747      At Location: 7174

| Audience | Create Date | Logged By | Note |
|---|---|---|---|
| All | 03/27/09 10:52 | RANDOLPH, S | Sunroof will not close,Horn wire torn off,dirty air filter,Frt brake pulastion,Rear brake pads under 2/32, 4 of the 5 tires are under 3/32,console top open/ close is jambed,check for sludge,No sludge,chase tag bolts holes,Swap spare,Radio is missing. |
| All | 03/27/09 11:12 | ERIC, H | 3577 QUOTE NUMBER AT LEXUS FOR CAPS |

Certified Document Number: 47889026 - Page 7 of 19

CMAX 00061

# CarMax ®     Notes for RO# 528092     At Location: 7150

| Audience | Create Date | Logged By | Note |
|---|---|---|---|
| All | 03/20/09 00:28 | FRIDAY, E | radio value botton not working, need repair. 1 horn wire broken off, and need repair. shifter knob missing, maybe in sales department. air filter dirty. bad vibration on brake front, rotors burt bad. rear pad 1/32. wheel lock remove. front bracket plate. |
| All | 03/20/09 00:30 | FRIDAY, E | need 4 tires. l.front tires 8/32. r.front tires 2/32. r.rear tires 2 /32. r.front 2/32. |
| All | 03/20/09 01:19 | FRIDAY, E | 1 center cap |
| All | 03/20/09 01:51 | FRIDAY, E | need to remove radio or repair 0.5hrs  and 0.5 hrs installed radio |
| All | 03/20/09 02:18 | GENE, W | SHOP HOLD FOR HIGH RECON |
| All | 03/20/09 10:50 | ALLISON, K | INFORMED T.P.M. THAT THE RADIO NEEDS TO BE PULLED. |
| All | 03/24/09 11:31 | ANDRE, S | shop hold for buyer decision |
| All | 03/24/09 11:35 | ANDRE, S | The RADIO REPAIR, VOLUME BUTTON AND TUNE BUTTON NOT WORKING. part line was put into PNN status for the following reason: Repair Not Needed. |
| All | 03/24/09 11:35 | ANDRE, S | The WHEEL CENTER CAP part line was put into PNN status for the following reason: Repair Not Needed. |
| All | 03/24/09 11:35 | ANDRE, S | The LISC TAG BRACKET-FRONT BRACKET part line was put into PNN status for. the following reason: Repair Not Needed. |
| All | 03/24/09 11:35 | ANDRE, S | The NAME BRAND TIRE-225/65R17 101S part line was put into PNN status for --- the following reason: Repair Not Needed. |
| All | 03/24/09 11:35 | ANDRE, S | The AIR FILTER (A2933C) part line was put into PNN status for the following reason: Repair Not Needed. |
| All | 03/24/09 11:36 | ANDRE, S | The LUG NUTS-CHROME  SHORT. part line was put into PNN status for the following reason: Repair Not Needed. |
| All | 03/24/09 11:36 | ANDRE, S | The OIL FILTER part line was put into PNN status for the following reason: Repair Not Needed. |
| All | 03/24/09 11:36 | ANDRE, S | The BULK OIL part line was put into PNN status for the following reason: Repair Not Needed. |
| All | 03/24/09 11:37 | ANDRE, S | partnered with austin, kick to wholesale |
| All | 03/24/09 14:20 | EBBIE, B | excessive damage to pass front door |
| All | 03/24/09 14:26 | ROXANNE, B | The RR PADS part line was put into PNN status for the following reason: Incorrect Part. |
| All | 03/24/09 16:07 | CJ, S | approved for kick to wholesale (austin, andre) due to high cosm recon costs. |

Certified Document Number: 47889026 - Page 8 of 19

# CarMax ®     Notes for RO# 888390     At Location: 7111

| Audience | Create Date | Logged By | Note |
|---|---|---|---|
| All | 07/02/09 10:24 | JACKIE, J | customer rtn'd call |
| All | 07/02/09 10:33 | JACKIE, J | customer called |
| All | 07/02/09 14:20 | ISAAC, I | The customer has elected to take the vehicle and have it repaired somewhere else |

Certified Document Number: 47889026 - Page 9 of 19

# CarMax ®          Notes for RO# 895725     At Location: 7111

| Audience | Create Date | Logged By | Note |
|---|---|---|---|
| All | 09/18/09 07:49 | LONG, L | BRAKE LIGHT AND VSC LIGHT ARE ON. HARD BRAKES. |
| All | 09/18/09 14:55 | ISAAC, I | I explained to the customer that we could not move forward untill the contaminated fuel is removed. She asked for an estimate. |

CMAX 00064

## Your AutoCheck Vehicle History Report



**WARNING! This vehicle does NOT qualify for Buyback Protection!**

The vehicle identification number you submitted has been analyzed and summary information on your car is shown below.

Report Run Date: 2011-02-01 17:30:55.700 EST

| | |
|---|---|
| Vehicle Description: | 2T2HA31U05C054670 |
| Title Check: | No record Reported to AutoCheck |
| Problem Check: | Record(s) Reported to AutoCheck |
| Odometer Check: | Record(s) Reported to AutoCheck |
| Vehicle Information: | Record(s) Reported to AutoCheck |
| Full History: | Record(s) Reported to AutoCheck |

## Vehicle Description <span>Back to top</span>

| | |
|---|---|
| VIN: | 2T2HA31U05C054670 |
| Year: | 2005 |
| Make: | Lexus |
| Model: | RX330 |
| Style/Body: | SUV 4D |
| Engine: | 3.3L V6 MPI |
| Country of Assembly: | Canada |
| Last Reported Odometer Reading | 51,402 |

 No problem    Problem found   Information found

## TitleCheck <span>Back to top</span>

 **Your Vehicle Checks Out!** AutoCheck's database for this 2005 Lexus RX330 (2T2HA31U05C054670) show no significant Title events. When found, events often indicate past automotive damage or warnings associated with the vehicle title.

| Problems Checked | Results Found |
|---|---|
| Abandoned |  No Abandoned Record Reported to AutoCheck |
| Damaged |  No Damaged Record Reported to AutoCheck |
| Fire Damage |  No Fire Damage Record Reported to AutoCheck |
| Grey Market |  No Grey Market Record Reported to AutoCheck |
| Hail Damage |  No Hail Damage Record Reported to AutoCheck |
| Insurance or Probable Total Loss |  No Insurance Loss Title or Probable Total Loss Record |
| Junk |  No Junk Record Reported to AutoCheck |
| Rebuilt/Rebuildable |  No Rebuilt/Rebuildable Record Reported to AutoCheck |
| Salvage | No Salvage Record Reported to AutoCheck |

DEFENDANT'S EXHIBIT
B-12
tabbies

| Problems Checked | Results Found |
|---|---|
| | |

## ProblemCheck <span style="float:right">Back to top</span>



**Problem Found!** AutoCheck's database for this 2005 Lexus RX330 (2T2HA31U05C054670) found history events that indicate a significant automotive problem. These problems can indicate previous car damage, theft or other significant problems.

| Problems Checked | Results Found |
|---|---|
| NHTSA Crash Test Vehicle | No NHTSA Crash Test Vehicle Record Reported to AutoCheck |
| Frame Damage | Frame Damage Record(s) Reported to AutoCheck |
| Major Damage Incident | No Major Damage Incident Record Reported to AutoCheck |
| Manufacturer Buyback/Lemon | No Manufacturer Buyback/Lemon Record Reported to AutoCheck |
| Odometer Problem | No Odometer Problem Record Reported to AutoCheck |
| Recycled | No Recycled Record Reported to AutoCheck |
| Salvage Auction | No Salvage Auction Record Reported to AutoCheck |
| Water Damage | No Water Damage Record Reported to AutoCheck |

## OdometerCheck <span style="float:right">Back to top</span>

**Your Vehicle Checks Out!** For this 2005 Lexus RX330 (2T2HA31U05C054670) no indication of an odometer rollback or tampering was found. We calculate odometer rollbacks by using AutoCheck business rules to determine reported odometer readings are less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage. AutoCheck's business rules have been created and refined to help identify potential rollbacks from the reported odometer readings. Not all odometer readings are used to determine rollbacks.

**Report Run Date: 2011-02-01 17:30:55.700 EST**

| Date Reported | Odometer Reading |
|---|---|
| 02/23/2005 | 12 |
| 03/14/2009 | 44,649 |
| 03/16/2009 | 44,649 |
| 06/17/2009 | 44,935 |
| 10/22/2010 | 51,402 |
| 11/01/2010 | 51,402 |

## Vehicle Information <span style="float:right">Back to top</span>



**Information Found!** AutoCheck found additional information on this vehicle. These records will provide you with more past history for this 2005 Lexus RX330 (2T2HA31U05C054670)

| Problems Checked | Results Found |
|---|---|
| Accident Data | 2 Accident Record Reported Through Accident Data Sources |
| Corrected Title | No Corrected Title Record Reported to AutoCheck |

Certified Document Number: 47889026 - Page 12 of 19

CMAX 000130






| Problems Checked | Results Found |
|---|---|
| Driver Education | No Driver Education Record Reported to AutoCheck |
| Duplicate Title | No Duplicate Title Record Reported to AutoCheck |
| Emission/Safety Inspection | No Emission/Safety Inspection Record Reported to AutoCheck |
| Fire Damage Incident | No Fire Damage Incident Record Reported to AutoCheck |
| Fleet, Rental and/or Lease Use | Fleet, Rental and/or Lease Use Record(s) Reported to AutoCheck |
| Taxi Use | No Taxi Use Record Reported to AutoCheck |
| Loan/Lien | Loan/Lien Record(s) Reported to AutoCheck |
| Livery Use | No Livery Use Record Reported to AutoCheck |
| Government Use | No Government Use Record Reported to AutoCheck |
| Police Use | No Police Use Record Reported to AutoCheck |
| Repossessed | No Repossessed Record Reported to AutoCheck |
| Storm Area Registration/Title | No Storm Area Registration/Title Record Reported to AutoCheck |
| Theft | No Theft Record Reported to AutoCheck |

## Full History                                    Back to top

Below are the historical events for this vehicle listed in chronological order. Any discrepancies will be in bold text.

Report Run Date: 2011-02-01 17:30:55.700 EST
Vehicle: 2005 Lexus RX330 (2T2HA31U05C054670)

| Event Date | Event Location | Odometer Reading | Data Source | Event Detail |
|---|---|---|---|---|
| 12/13/2004 | IL | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 02/16/2005 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 02/23/2005 | HIGHLAND PARK, IL | 12 | Motor Vehicle Dept. | TITLE (Title #:X5054028009) |
| 08/02/2006 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 06/20/2007 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 11/12/2008 | HIGHLAND PARK, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL(Leased Vehicle) |
| 12/06/2008 | HIGHLAND PARK, IL | | Police Report | ACCIDENT REPORTED(Case #:8502858) |
| 03/14/2009 | TN | 44,649 | Auto Auction | REPORTED AT AUTO AUCTION |
| 03/16/2009 | TN | 44,649 | Auto Auction | AUCTION ANNOUNCED AS FLEET/LEASE |
| 06/05/2009 | HOUSTON, TX | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL |
| 06/17/2009 | HOUSTON, TX | 44,935 | Motor Vehicle Dept. | TITLE (Title #:10176839967124935)(Lien Reported) |
| 11/14/2009 | HOUSTON, TX | | Accident Source | ACCIDENT OR VEHICLE DAMAGE REPORTED: RIGHT REAR CORNER ACCIDENT OR VEHICLE DAMAGE REPORTED |
| 10/22/2010 | TX | 51,402 | Auto Auction | REPORTED AT AUTO AUCTION |
| 11/01/2010 | TX | 51,402 | Auto Auction | |

CMAX 000131

| Event Date | Event Location | Odometer Reading | Data Source | Event Detail |
|---|---|---|---|---|
| | | | | AUCTION ANNOUNCED AS FLEET/LEASE |
| 11/05/2010 | TX | | Auto Auction | **AUCTION ANNOUNCED AS UNIBODY DAMAGE** |

**AutoCheck Terms and Conditions**
This report, and any reliance upon it, is subject to AutoCheck Terms and Conditions . If you obtained the report from a dealer, the dealer has been provided with these Terms & Conditions and can share them with you. These AutoCheck Terms and Conditions are also available at any time at www.autocheck.com/terms or by writing to Experian: Experian Automotive C/O AutoCheck Customer Service 955 American Lane Schaumburg IL 60173

**Buyback Protection Terms and Conditions**
This vehicle (2T2HA31U05C054670) does not quailfy for AutoCheck Buyback Protection.

**About AutoCheck**
AutoCheck vehicle history reports by Experian Automotive is the leading vehicle history reporting service. With expert data handling, the Experian Automotive database houses over 4 billion records on a half a billion vehicles. Every AutoCheck vehicle history report will give you confidence when buying or selling your next used vehicle, with superior customer service every step of the way.

# CARMAX Rust Standards

3/22/2010

**Inspecting Vehicles for Rust**

Rust (corrosion) is the condition resulting from a reaction between a substance (in this case, the steel of which a vehicle is made) and its environment. Surface **rust** is a cosmetic condition that doesn't affect the strength or rigidity of the metal. Perforating rust compromises the structural integrity of the metal.

Inspection criteria:
- A visual inspection will be conducted during the Appraisal Process, the CIW Inspection and the Mechanical Inspection (CQI) by the associates normally assigned those duties.
- If perforating rust is suspected, the associate currently performing the inspection will test the metal integrity by pushing on the panel or component with a screwdriver (see picture below).
  - Perforating rust is confirmed when the screwdriver goes through the panel or component being tested.
- Obvious perforating rust (part of the panel or component is missing, or perforation or holes are visible) requires no testing, only a visual inspection.





Evidence of significant rust where the structural components are perforated and rigidity of the vehicle is compromised is considered to be frame damage.

Standards:
- Surface rust on exterior body panels must be repaired to comply with the Cosmetic Reconditioning Standards.
- Surface rust on the undercarriage and on mechanical components requires no action.
- Perforating rust on structural components is not acceptable.
- Bolt-on structural components affected by Perforating Rust must be replaced. It is acceptable to retail vehicles with replaced bolt-on panels. Three or more replaced, consecutive bolt-on panels would not be acceptable. Two panels would be acceptable.
- Bolt-on non-structural components affected by perforating rust must be replaced. This would include door skins, fenders, hoods and trunk lids and any or all the body panels that make up a pick-up bed. It would also include all bolt-on mechanical components such as cross members, fluid lines (brake, fuel, etc.), struts, shocks, springs, calipers, gas tanks, brackets, supports, etc.

DEFENDANT'S EXHIBIT
B-13

 **Rust Standards**                                                3/22/2010

Examples of Perforated Rust



Notice how the screwdriver has gone through the welded-on floor panel indicating perforating rust; we will kick this car to Wholesale



There is perforating rust on this welded-on quarter panel; we won't retail this vehicle



Obvious perforating rust on a welded-on quarter panel; we won't retail this vehicle



Part of this floor panel has rusted away; the vehicle gets kicked to Wholesale

CMAX 000134

# CARMAX Rust Standards

3/22/2010

**Examples of Surface Rust**



Both these pictures show surface rust (no perforation) on the undercarriage; repair of this condition is not required



These rear suspension components (links, bars, housing, etc.) are not perforated and pass MECHANICAL STANDARDS

Photo 1



Surface rust on a rear brake line and bracket; there is no leakage or perforation

Photo 2

The bolt-on components shown on photos 1, 2, 3 & 4 passed both the perforating rust test and the functionality test during the CQI; these components meet our standards



Surface rust on a lower control arm

Photo 3



Surface rust on a front cross member

Photo 4

Certified Document Number: 47889026 - Page 17 of 19

CMAX 000135

**CARMAX** **Rust Standards** 11/30/2009

There are 2 types of rust damage:

**Surface Rust –** rust on the surface that does not penetrate into the metal. There is no structural loss.
- All surface rust must be removed and the area repaired
- The repaired area is subject to Chip and Scratch Standards

**Penetrating Rust –** penetrates completely through the clear coat, paint and metal surface causing weakening of the metal.
- Cannot be repaired and must be kicked to Wholesale or panel replaced



**Note: The only exception to the Surface Rust Standard is on the undercarriage, where surface rust can remain.**

Certified Document Number: 47889026 - Page 18 of 19

 **Flood Damage Standards** 11/30/2009

Inspecting Vehicles for Flood Damage

 

Vehicles we have purchased with flood damage will not be sold as retail under any circumstance. Any CarMax vehicle found to have flood damage must be changed from Used or ValuMax reconditioning to Wholesale status.

Look for these common signs of flood damage:
- A musty smell inside the vehicle
- Soaking wet carpet or upholstery
- Stains where water has saturated vehicle's interior, then receded
- Silt lines and stains where water has receded and left marks

Flood damaged vehicles may also be detected using the AutoCheck program in the Business Office. If you find any evidence of flood damage, or if you suspect that a vehicle has flood damage, tell your Supervisor immediately.


DEFENDANT'S
EXHIBIT
B-14



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:        47889026 Total Pages:  19

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

NO. 2010-51729

| | | |
|---|---|---|
| HOA TU LY. | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| CARMAX AUTO SUPERSTORES. INC. | § | |
| and WARREN MOODY. | § | |
| Defendants. | § | 295th JUDICIAL DISTRICT |

### AFFIDAVIT OF ISAAC HARVEY

BEFORE ME, the undersigned authority on this day personally appeared Isaac Harvey, who is known to me and who, being by me duly sworn upon his oath, did depose and say as follows:

      1.     "My name is Isaac Harvey. I am over the age of eighteen years, have never been convicted of a felony, am fully competent to testify, and have personal knowledge of the facts stated in this Affidavit.

      2.     I am an employee and a Recon Production Manager for CarMax Auto Superstores, Inc. ("CarMax"). I have been with CarMax since 2002. In the course of my employment with CarMax, my duties have included the inspection and evaluation of over 10,000 vehicles to determine if they had sustained flood damage and, if so, what repairs were warranted. My duties also include the oversight of the diagnosis and repair by CarMax technicians of issues with vehicles brought in by customers after purchase.

      3.     The first time I met Mrs. Ly occurred when she had her vehicle, a 2005 Lexus RX 330 (the "subject vehicle"), towed in for service after thirty days of owning it with the concern of it not starting. The subject vehicle was taken in with the service consultant explaining that she was past her thirty day warranty and she could have charges that she would be responsible for. Mrs. Ly agreed and the subject vehicle was sent to a technician for him to diagnose the no start issue.

      4.     The technician thoroughly checked the subject vehicle and found that it had ceased working because of a failure of the fuel pump caused by the presence of contaminated fuel. No other issues were found, despite a thorough inspection and diagnosis of the entire subject vehicle. The technician put a sample of the contaminated fuel in a clear container and gave it to the service consultant to show the customer. The service

Certified Document Number: 47889036 - Page 1 of 5

1879417-1:CAAU:0048



consultant called Mrs. Ly and explained that the subject vehicle would need a new fuel pump and additional service to the fuel system to remove and repair the contaminated fuel. The consultant gave Mrs. Ly an estimate for the repairs and she declined to pay for them.

5.    Mrs. Ly subsequently showed up at CarMax again, and asked to speak to a manager. I had already been brought up to speed on the situation by the service consultant. I met Mrs. Ly and she said that she felt that CarMax should pay for the repairs because she had bought the subject vehicle in this condition. I explained that if the subject vehicle was sold to her in this condition she would not have been able to drive off the lot (she had, in fact, taken the vehicle for a test drive on the date of purchase) and that, in fact, the subject vehicle would not have been able to run at all due to the amount of contaminated fuel present. I then showed Mrs. Ly the contaminated fuel sample. I then explained that she had put over one thousand miles on it and had it over thirty days. The gas mileage on the subject vehicle was 19 to 25 miles per gallon, and it has a 19.2 gallon fuel tank, so it had been completely refueled at least two times since it was purchased, meaning that the contaminated fuel had to have come from a source subsequent to the purchase. I explained that either one of two things had happened:

a.) She had received the contaminated fuel while getting gas from a gas station and that if that was the case she should go back to where she had her last fill up and have them cover the repairs; or

b.) Someone had put some substance in her fuel tank contaminating the fuel.

7.    Mrs. Ly then replied that her son had taken the subject vehicle on a trip to Louisiana and that he could have gotten the contaminated fuel then. I replied again that if he did get the contaminated fuel from a gas station she should have them cover the repairs but that CarMax would not cover the repairs because this happened after the point of sale and the failure was caused by the contaminated fuel being added while the subject vehicle was in her possession.   Mrs. Ly then told me that she could not afford the price of the repair and that she would take the subject vehicle to another shop where she could have it repaired more inexpensively. Mrs. Ly then called a tow truck and had her vehicle picked up.

8.    The second time I met with Mrs. Ly was when she brought the subject vehicle in for repairs with a check engine light on. The service consultant remembered Mrs. Ly and made me aware that she was bringing the subject vehicle back in with it not running correctly and had a check

engine light on. I then met Mrs. Ly on the service drive and asked her if she had the contaminated fuel removed from the subject vehicle and the system cleaned. Mrs. Ly replied that she had the contaminated fuel removed and the subject vehicle repaired at another shop. I then replied that if we checked the subject vehicle out and found that there were any issues related to the contaminated fuel she would be responsible for all of the repair charges. She agreed and we had a technician check the subject vehicle for the rough running condition and check engine light.

9. The technician diagnosed the subject vehicle and found that there were still trace amounts of the contaminated fuel in the fuel tank and provided another sample for Mrs. Ly to see for herself. The presence of this contaminated fuel could only have been due to either the introduction of new contaminants since the first time that Mrs. Ly had brought in the subject vehicle, or the failure of the shop to which Mrs. Ly took the car to completely remove the contaminated fuel and clean out the fuel system, as I had told her was required. I then called Mrs. Ly and explained that the subject vehicle still had trace amounts of contaminated fuel and this was causing it to run rough and also causing the check engine light to come on. Mrs. Ly responded that she had paid the other shop to fix this. I responded that she should then take the subject vehicle back to that facility so they could complete the repair. She then agreed and took the subject vehicle and left.

10. Months later, I was asked if I would take a look at the subject vehicle at another shop because she was alleging that it had been flooded and that CarMax should buy it back. I agreed and went to a shop that was owned by Subhi Abuhamra, a/k/a "Ali" (hereinafter "Ali"). I talked to Ali and explained that I was there to inspect the subject vehicle. Ali took me to the back of his shop where subject vehicle was parked. He attempted to start the vehicle but the battery was dead. He then sent a couple of his technicians to get a jump box to jump start the subject vehicle so we could pull it in to the shop to be put on a lift to inspect it. While the technicians were retrieving the jump box, I looked at the subject vehicle and noticed that the interior had a lot of trash thrown inside of it. It also had clothing and shoes thrown inside of it. It was extremely dirty and appeared that it had not been well maintained at all. I also noticed that there was body damage to the left front of the subject vehicle. Ali came back with his technicians and jump started the subject vehicle. It ran fine but still had a check engine light on. The technicians put the subject vehicle into drive but it did not move. Ali said that the transmission was broken and that they would push the subject vehicle in. I asked Ali about the body damage and he said that she was driving on the freeway and that there was a board that had been run over by another vehicle and it flew up and hit the subject vehicle.

Certified Document Number: 47889036 - Page 3 of 5

11.     The subject vehicle was pushed into the bay and set on a lift. The technicians lifted the subject vehicle and I first noticed that the frame of the vehicle, the front suspension and all of the sheet metal on the front of the vehicle had been replaced since it was purchased from CarMax (they were all still new looking compared to the rest of the vehicle). I asked Ali about the new parts and he said that Mrs. Ly had been involved in a bad accident and that the frame, suspension and all of the sheet metal on the front had been completely replaced. I replied that it must have been a really bad wreck. He said that it was and that his shop had performed the repairs.

12.     Ali then showed me the rear of the subject vehicle where some of the parts had light surface rust. I replied that this was normal for vehicles that were purchased from up north as this one was but that it did not indicate a problem or flood damage. He then lowered the vehicle on the lift and unbolted a seat, showing me the bare metal seat frame and explaining that it had surface oxidation. I replied with this being a normal condition as the part is bare metal. I also said that we could look at any vehicle in his parking lot and find surface rust on seat frames or any bare metal part but that this was not an indication of flood damage.

13.     The presence of surface rust on vehicle parts is not a reliable indicator of past flooding or immersion of a vehicle because substantial surface oxidation will occur in humid environments (e.g., the Texas Gulf Coast) without any direct exposure to water or other liquids. Moreover, surface rust such as was present on the subject vehicle can accrue in a very short time in such environments, but does not cause or contribute to any problems with vehicle performance.

14.     In the course of my work, as called for by the rust standards of CarMax (a true and correct copy of the CarMax Rust Standards that I referred to is attached to Defendants' Traditional Motion for Summary Judgment as Exhibit B-13), I normally look for what is known as either "perforating" or "penetrating" rust, rust which has physically penetrated the interior of a given vehicle part to such a degree that it has substantially compromised that part's structural integrity. I also look for the following specific indicators of flood damage:

- A musty smell inside the vehicle
- Soaking wet carpet or upholstery
- Stains where water has saturated the vehicle's interior, then receded
- Silt lines and stains where water has receded and left marks

The foregoing indicators are the standard signs of flood damage used by CarMax. A true and correct copy of the CarMax Flood Damage Standards

that I referred to is attached to Defendants' Traditional Motion for Summary Judgment as Exhibit B-14.

15.    After closely inspecting the subject vehicle, and applying my training, experience and both the flood and rust standards of CarMax (which are in keeping with the standards applied throughout the used/pre-owned car retail industry), I determined that there was no perforating or penetrating rust present when it was showed to me by Ali, nor were any of the flood damage indicators present.  Based this inspection, as well as my review of the AutoCheck Vehicle History Reports attached to Defendants' Traditional Motion for Summary Judgment as Exhibits B-9 and B-12, it is my opinion, to a reasonable degree of scientific certainty, that, as of the date that it was showed to me by Ali, the subject vehicle had not sustained any flood damage.

16.    After looking at the vehicle, I thanked Ali for his time and left.

17.    It was obvious to me at this point that Mrs. Ly had a vehicle where the fuel system had, subsequent to its purchase by Mrs. Ly, been contaminated, wrecked, wrecked again and that now would need a transmission.  I understand her not wanting the vehicle after all of this but CarMax has no responsibility in any of these issues and that she was refusing to accept responsibility for any of it.  It is no wonder that she let the vehicle be repossessed as she could not drive it.  You could tell that the vehicle had been sitting for some time in the back of Ali's shop judging by the condition it was in when I observed it.

18.    I have not had any subsequent opportunity to inspect or observe the vehicle after the occasion at Ali's shop.    It is my understanding that it was repossessed by Wells Fargo due to Mrs. Ly's non-payment of her auto loan."

Further affiant sayeth not.

_____
Isaac Harvey

SUBSCRIBED AND SWORN to before me on this _14_ day of February 2011, to certify which witness my hand and seal of office.


MICHAEL LEE MUENCH JR.
Notary Public, State of Texas
My Commission Expires
May 17, 2014

_____
Notary Public, State of Texas

1879417-1:CAAU:0048



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:        47889036 Total Pages:  5

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Filed 11 February 17 P3:46
Chris Daniel - District Clerk
Harris County
ED101J016183339
By: adiliani solis

NO. 2010-51729

| | | |
|---|---|---|
| HOA TU LY, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| CARMAX AUTO SUPERSTORES, INC. | § | |
| and WARREN MOODY. | § | |
| Defendants. | § | 295th JUDICIAL DISTRICT |

## FINAL SUMMARY JUDGMENT

On this day, the Court considered the Traditional Motion for Summary Judgment filed by Defendants.  Upon considering the Motion, the response of the Plaintiff (if any) and the arguments of counsel, the Court concludes that the Motion has merit and is GRANTED. Accordingly, Defendants are entitled to judgment in their favor as a matter of law.  It is, therefore,

ORDERED that Plaintiff HOA TU LY ("Plaintiff") take nothing by her claims against Defendants CARMAX AUTO SUPERSTORES, INC. and WARREN MOODY, and that all of Plaintiff's claims against Defendants CARMAX AUTO SUPERSTORES, INC. and WARREN MOODY are DISMISSED WITH PREJUDICE.  It is further

ORDERED, that this is a final judgment, and disposes of all claims and all parties and is appealable.

Signed this ____ day of _____, 2011.

_____
Judge Presiding

Submitted and entry requested by:


HUGHES, WATTERS & ASKANASE. L.L.P.

　*//s//Lindsay L. Lambert* 　　　　　
Lindsay L. Lambert
State Bar No. 11844225
333 Clay, 29th Floor
Houston, Texas 77002-7354
(713) 759-0818 – Telephone
(713) 759-6834 – Facsimile
llambert@hwallp.com – Email

ATTORNEYS FOR DEFENDANTS,
CARMAX AUTO SUPERSTORES, INC.
and WARREN MOODY

1890619-1:CAAU:0048



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 22, 2011

Certified Document Number:        47889033 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**